CHARLES E. PAIN, Assignee,

*v.*

ROBERT B. FARSON *et al.*

*Opinion filed April 17, 1899.*

1. CORPORATIONS—*when arrangement between directors is valid and not in fraud of creditors.* A contract made between the directors of a corporation, who are the only stockholders, whereby corporate funds are loaned to one of the directors to purchase a lot for himself, which he permits the corporation to use for erecting a storehouse in consideration of his paying no interest on the note evidencing the loan, is valid and not in fraud of creditors.

2. TRUSTS—*what facts will not raise resulting trust.* Money furnished by a corporation to a director for the purpose of making payments on a lot previously acquired by him under a contract of purchase does not create a resulting trust in favor of the corporation, neither does such trust arise by reason of the use of money for the erection of buildings upon the lot.

3. WITNESSES—*when husband is competent in behalf of wife.* A husband may testify as to business transactions in behalf of his wife, though joined as co-defendant, where the suit relates to her separate property, the bill being filed by the assignee of a corporation in which the husband was chief stockholder, to set aside the deed to her and to have a resulting trust declared in favor of the corporation for the benefit of creditors.

4. SAME—*complainant cannot deprive defendant of testimony by making witness co-defendant.* A complainant cannot deprive the defendant of the testimony of a witness who is not a necessary or proper party, by making such witness a co-defendant.

APPEAL from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

JOHN E. WATERS, and C. B. EYER, for appellant:

A resulting trust arises, by implication of law, where land has been purchased with the money of one person and the deed taken to another. *Ward* v. *Armstrong*, 84 Ill. 151; *Smith* v. *Smith*, 85 id. 189; *Higgins* v. *Lansingh*, 154 id. 305; *Harris* v. *McIntyre*, 118 id. 275.

If a director takes title in his own name to property which has been purchased for the corporation with its money, a trust instantly results in favor of the corpora-

tion. *Railway Co.* v. *Lampson,* 47 Barb. 533; *Palmetto Lumber Co.* v. *Risley,* 25 S. C. 309; 4 Kent, (6th ed.) 306; Perry on Trusts, sec. 127; Pomeroy's Eq. sec. 1051.

Directors are the officers or agents of the corporation, and represent the interests of that abstract legal entity and of those who own the shares of stock. *Twin Lick Oil Co.* v. *Marbury,* 91 U. S. 589; *Gottlieb* v. *Miller,* 154 Ill. 51.

Managing officers of a corporation are disabled by law from acting upon any matter which involves a corporate obligation, or other corporate action, in their own favor or in which they are interested. *Higgins* v. *Lansingh,* 154 Ill. 305; *Gridley* v. *Railway Co.* 71 id. 202.

Directors of a corporation have no authority to bind the company to any contract made with themselves personally. *Higgins* v. *Lansingh,* 154 Ill. 305; 1 Morawetz on Private Corp. secs. 517, 525; *Railway Co.* v. *Carson,* 51 Ill. App. 564; *Gilman* v. *Kelly,* 77 Ill. 425.

FARSON & GREENFIELD, for appellees:

The evidence to establish a resulting or constructive trust should be clear, strong, unequivocal and unmistakable. *VanBuskirk* v. *VanBuskirk,* 148 Ill. 9; *Strong* v. *Messinger,* 148 id. 431; *Reed* v. *Reed,* 135 id. 482; *Furber* v. *Page,* 143 id. 622; *Francis* v. *Roades,* 146 id. 635.

Where money is merely loaned or advanced to another, and that other uses the money so loaned or advanced in the purchase of real estate, without any intention or understanding that the purchase shall inure to the benefit of the person loaning the money, then no trust arises. *Strong* v. *Messinger,* 148 Ill. 431; Perry on Trusts, secs. 133, 140; Lewin on Trusts, 163.

The party claiming the resulting trust must show that he paid some specific sum which was appropriated or had reference to, by agreement or otherwise, the purchase price of some distinct interest in or aliquot part of the premises purchased, as an equivalent of such share or part. Perry on Trusts, sec. 132; *Stephenson* v. *McClintock,*

141 Ill. 604; *Furber* v. *Page,* 143 id. 622; *Strong* v. *Messinger,* 148 id. 431.

A resulting trust can never be established by payments which are not co-incident with the purchase of the land. It must arise, if at all, from the circumstances and status of the parties as they existed at the time the title was acquired and the money appropriated and used in the purchase thereof. Perry on Trusts, sec. 133; Lewin on Trusts, 170.

Courts will not enforce resulting or constructive trusts after a great lapse of time or *laches* on the part of the supposed *cestui que trust,* especially when it appears that the supposed nominal purchaser has occupied and enjoyed the estate. Perry on Trusts, sec. 141; Lewin on Trusts, *179; *McDonald* v. *Stow,* 109 Ill. 40; *Breit* v. *Yeaton,* 101 id. 242; *Howe* v. *South Park Comrs.* 119 id. 101; *Heneke* v. *Floring,* 114 id. 554; *Lequatte* v. *Drury,* 101 id. 77; *Mc-Ginnis* v. *Jacobs,* 147 id. 24.

The party who challenges the title of his adversary to real estate must be diligent in discovering the facts impeaching the title, and diligent in his application for relief. *Howe* v. *South Park Comrs.* 119 Ill. 101.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

Prior to 1890 the Hintze & Baker Company, a corporation, was organized under the laws of the State of Illinois for the purpose of conducting a business of buying and selling sash, doors and blinds at Chicago, Illinois. About January 17, 1893, the name was changed to that of the Farson & Libbey Company. The stock of the company was $50,000, consisting of 500 shares of $100 each, 250 of which shares were owned by Robert B. Farson, 175 shares were owned by Daniel L. Libbey, and 75 shares were owned by George M. Williamson. These three owners of shares constituted the officers and board of directors of the company. Daniel L. Libbey died on December 25,

1894, and Frank H. Libbey became the president of the company. The business at Chicago was managed and controlled by Robert B. Farson, who was the secretary, treasurer, manager and a director of said company and had the management of its business. Daniel L. Libbey and George M. Williamson resided at Oshkosh, Wisconsin, and were associated there in the business of manufacturing sash, doors and blinds. The Farson & Libbey Company did a business of from $300,000 to $600,000 a year.

In 1890 Robert B. Farson entered into an agreement with the agents of the owner for the purchase of lot 13 in block 3, in Ogden's addition to Chicago, for the price and consideration of $2600, paying on the contract, as earnest money, the sum of $100. That contract was entered into on April 8, 1890. On July 16, 1890, $1000 more was paid and a deed was made to said Farson, and he made a note, secured by a mortgage on said lot, for the balance of $1500. July 11, 1890, a contract was entered into in the name of Robert B. Farson for the north half of lot 12 of said block 3, and on September 4, 1890, $100 was paid as earnest money. The consideration for the purchase of said half lot was $1500. On October 24, 1890, the balance of the purchase money, $1400, was paid and a deed was made to Clara M. J. Farson, the wife of Robert B. Farson. Just prior to the assignment hereinafter referred to, Farson conveyed lot 13 to his wife.

The Farson & Libbey Company, on or about December 30, 1895, made an assignment for the benefit of creditors, and Charles E. Pain was the assignee, who filed this bill to declare a resulting trust. It is alleged in the bill that at the time these lots were thus obtained the company went into possession of the same and paid the taxes on said lots and occupied them for about five years; that there was a small warehouse and barn on the lots at the time of their purchase, and the company constructed thereon an additional warehouse of corrugated iron at a cost of $1072, which was paid for with the funds of the

company; that this corrugated iron warehouse was subsequently removed onto lot 14, and $600 additional of money belonging to the company was used in building an addition to it; that lot 14 was leased on the first of January, 1895, for ninety-nine years by Robert B. Farson for the use of the company, but the lease was taken in the name of Farson, because, as he testifies, the company was organized for the term of twenty years and its charter would expire in five years. It is alleged in the bill that no part of the consideration for lot 13 was paid by Robert B. Farson or Clara M. J. Farson, but it was paid for with money belonging to the company, without the knowledge and consent of the stockholders and directors, and the bill seeks to have declared a resulting trust in favor of the company. The same allegation is made as to the purchase of the north half of lot 12, and the same relief is asked. The bill also avers that on March 12, 1895, Robert B. Farson mortgaged the said lots to secure the sum of $15,000, and erected buildings on the said lots, which were occupied and used by the company, and it is alleged the buildings were paid for out of the funds of said company. Robert B. Farson and Clara M. J. Farson are made defendants to the bill, and complainant prays that Clara M. J. Farson may be adjudged to hold title to said premises in trust for the complainant, and that she be required to transfer and convey all her right, title and interest therein to the complainant, as assignee, and that the complainant be given a lien thereon for all funds of the corporation used by Farson in the purchase of the premises and the construction of the buildings thereon.

The defendants filed separate answers. The purchase of the lots and the price are admitted. By his answer Robert B. Farson states that he drew money from the company from time to time and charged himself with the same on the books of the company, but denies that the lots were purchased with the money of the company; avers that Libbey and Williamson were approached by

him, and requested by him to consent to the corporation purchasing the lots in controversy, and they, as directors of the corporation, refused to do so; that Farson then proposed that he would purchase the lots in his own name, which was assented to by Libbey and Williamson; that they consented that at the time of the purchase of said real estate he might use so much of the funds of the said company as would be necessary to complete the purchase and the same was to be charged to him, and any dividends thereafter earned upon his stock should be applied to the payment of such indebtedness, and that he should not be permitted to draw any dividends until such indebtedness was paid and canceled; that such arrangement was satisfactory to said Williamson and Libbey and they consented thereto, and authorized the defendant to borrow from said company such funds as might be necessary for the purchase, and to charge the same to his own account and become an indebtedness from him to the corporation; that at the time of the consummation of the purchase of the north half of lot 12 he was also further indebted to the said company in the sum of $1100, as shown by the books of the said company, and in order to further evidence the entire indebtedness aforesaid of $2500, the defendant made and executed to the order of the Hintze & Baker Company his note for the said sum of $2500, dated October 24, 1890, and due on or before three years from date, without interest, and made and attached to the said note a memorandum reading as follows, to-wit: "This note is for money furnished to buy the Sangamon street property, which Hintze & Baker Company are to occupy, for interest on investment, taxes, etc.—This note draws no interest;" that the indebtedness of the defendant to said company in the sum of $1100 prior to the purchase of said lot 13 was fully shown by the books of said company, and that the borrowing by defendant and use of the said sum of $1400 in the purchase of said real estate was also fully shown on the books of said company, both of

said sums being charged upon the books to the personal account of said defendant, and that when said indebtedness was liquidated by the giving of a note for $2500, as aforesaid, the said note was transferred to the account "bills receivable" and at all times remained in the said account; that the said Williamson and Libbey frequently inspected the books of said company and kept track of the same with great minuteness and fidelity, as both of them were engaged in carrying on an exactly similar business in the city of Oshkosh, Wisconsin; that both said Williamson and Libbey knew of the existence of the said book indebtedness and of the facts concerning the same, and never objected thereto; denies that his acts were in any manner fraudulent or contrary or prejudicial to the interests of the company; alleges that an agreement was made between himself and Williamson and Libbey that they might enter upon the property so purchased and use and construct a warehouse thereon and use the property in their business, in consideration that defendant should be released from the payment of interest on the $2500 note; avers that the money of the company was expended in the construction of a warehouse upon said property, which was afterwards removed by the corporation to the adjoining lot 14, and that the company still has possession of and owns and enjoys the same and has not lost the investment of the money which was put into the same; admits the conveyance of the real estate by him to Clara M. J. Farson and execution of mortgages to the amount of $15,000, and avers that the cost of the erection of buildings on the lots was paid for out of said loan; denies that the cost of the erection of said buildings was paid for out of the funds of said Farson & Libbey Company, and avers that defendant, instead of applying the proceeds of said building loan directly to the payment of the expenses of construction, used a large portion thereof, to-wit, the sum of $9591.97, for the benefit of the Farson & Libbey Company,—that is to say, that defendant advanced and paid

to the Farson & Libbey Company, or paid to take up its obligations and to maintain its credit and keep it afloat as a business institution, the said sum of $9591.97 out of the funds which had been borrowed for the purpose of making said improvements, and that the said Farson & Libbey Company, being so indebted for the funds so converted to its use, canceled the indebtedness by issuing its notes to certain contractors on the said building, and by furnishing certain merchandise for the construction of said building and the payment of certain money on account of the construction, which credits amounted in all to the sum of $9597.83, so that the said Farson & Libbey Company advanced for the construction of said building but about six dollars more than it received out of the proceeds of said building loan; avers that this manner of using the funds derived from said building loan was highly beneficial to said Farson & Libbey Company, inasmuch as it enabled the company to use the ready cash derived upon the said loan in the transaction of its business and to substitute therefor its stock of merchandise and long-time obligations, thus giving it the use of said cash in exchange for notes and merchandise; admits that on December 30, 1895, he conveyed all of said real estate to his co-defendant, Clara M. J. Farson, for an expressed consideration of $10,000; denies that there was in fact no consideration for said conveyance, and denies that the complainant has any right to question the amount of the consideration for said conveyance to Clara M. J. Farson; avers that she had contributed the sum of $1200 toward the purchase money of said real estate, and that the said defendant was also indebted to her in excess of the sum of $10,000 for moneys advanced by her to him at divers times, all of which formed a sufficient consideration for the conveyances aforesaid; denies that Clara M. J. Farson is a trustee for said company, or had knowledge at any time that he held said title to said real estate as trustee, and denies that he was such trustee.

The defendant Clara M. J. Farson filed her separate answer, denying all knowledge of any arrangement made or contemplated between Robert B. Farson and the company, and averring the payment by her of $1200, and averring, on information and belief, that the sum of $1200 was afterwards paid by Robert B. Farson out of funds secured by him from a loan on the security of the lot. The bill does not waive an answer under oath, and the answer of each of the defendants is sworn to.

Replications were filed and the cause was referred to a master to take testimony and report conclusions, and he made his report recommending that the bill be dismissed at the costs of the complainant. On a hearing on the master's report the circuit court of Cook county confirmed the report of the master and entered a decree dismissing the bill at complainant's cost, and he prosecutes an appeal to this court.

All the allegations of the bill are met by the sworn answers and the explanations therein made, which show that the money belonging to the incorporated company which was used by the secretary, treasurer and manager, Farson, was used with the consent of the other stockholders and officers of the company. The incorporated company was composed of but the three stockholders at that time, and whilst it was an incorporated company, yet in its organization it was so compact in its nature that the assent of all the stockholders to the action of the secretary, treasurer and manager in making the loan from the company to himself can be treated in the same way as if the three members constituted a firm as partners. If the three stockholders composed a firm as partners and made an agreement such as set up in the answer, by which the firm accepted the note of one of the partners, that transaction could in no manner be questioned. Whilst the directors of an incorporated company represent the stockholders, and their action must be an official action to bind the stockholders, yet where, as here, there

are no stockholders except those who are directors, and they assent to a contract of this character, it cannot be held that such contract is a fraud on any one or that the same is invalid.

The evidence shows, and the finding of the master is, that on April 8, 1890, Farson entered into a contract with the agents of the owner for the purchase of lot 13 at the price of $2600, paying on the contract the sum of $100, and that on July 16, 1890, $1000 more was paid, and he executed a mortgage on said lot to secure the payment of the balance. The evidence shows, and the master so reported, that a contract was entered into by Farson for the purchase of the north half of lot 12, which contract is dated in 1890, and the earnest money on which was paid September 4, 1890. On October 24, 1890, the balance of the purchase money, $1400, was paid and a deed was made to the defendant Clara M. J. Farson. A resulting trust does not arise by reason of payments made which are not co-incident with the purchase and the deed. It must arise, if at all, from the circumstances and status of the parties as they existed at the time the title was acquired and the money was appropriated and used in the purchase thereof. Money furnished for the purpose of making payments on lands theretofore acquired under a contract cannot create a resulting trust in favor of the person so loaning the money, neither can a resulting trust arise in real estate by reason of the fact that money is loaned or used for the erection of buildings on the property. Perry on Trusts, sec. 133; Lewin on Trusts, p. 170; *Furber* v. *Page*, 143 Ill. 622; *Lear* v. *Chouteau*, 23 id. 37.

At the time the contract for the purchase of the north half of lot 12 was made and $100 was paid no interest existed, even on the theory of the bill, in favor of this company. The evidence shows the execution of a note for the amount of the money used in the purchase of the property, which was derived by Farson from a loan from the company, and to the note a memorandum in writing

is attached.   That note and memorandum must be con--
sidered together, in connection with the books of the
corporation.   The books show that all money received
by Farson from the company was charged at the time
and the entries on the books all made as the transactions
occurred.   The items are entered as is usually done in
keeping books, and the other two stockholders and offi-
cers of the company could have known all the facts if
they had seen fit to investigate.   All that was done with
reference to this transaction was within the knowledge
and consent of the stockholders, as Farson's testimony
shows that they refused to be parties to the purchase
and consented to the loan.   He did not, in the purchase
of the lots, act in any capacity for the company, either
as director, secretary, treasurer or manager, and it can
not be held, from the evidence in this record, that he
misappropriated any of the funds of the company.   The
greater part of what is claimed to be owing to the com-
pany by Farson in this bill was incurred in erecting the
buildings on the lots.   When this was done Daniel L. Lib-
bey was dead, and his son, Frank H. Libbey, became con-
nected with the business.   The shares of stock were held
by the heirs of Daniel L. Libbey and by Farson, William-
son also being dead, and Frank H. Libbey consented, as
a director and president of the company, to the loan be-
ing made by the company to Farson.

Taking the entire testimony in the record, including
the books of the company, we would be disposed to hold
that this decree should be affirmed even though the tes-
timony of Farson were held incompetent.   Under the aver-
ments of the bill Clara M. J. Farson held the title to the
property in which a resulting trust was sought to be de-
clared.   It was her separate property, for which a valu-
able consideration had been paid by her, and the purpose
of the bill is to set aside this conveyance and deprive
her of the property.   Under section 5 of the chapter on
evidence and depositions, the husband is a competent

witness on behalf of the wife in litigation concerning her sole and separate property. He is also a competent witness in reference to transactions where he has acted as the agent of the wife. In chancery proceedings a complainant cannot deprive a party to the record of the testimony of a witness by making him a co-defendant. The position of the appellant is identical with the position of the company, and he can assert no right except such as could be asserted by it. Robert B. Farson was, at the time of the assignment, the owner of more than one-half the stock, having acquired part of the Williamson stock. Under the issues presented by this record we hold that he was a competent witness. He was not a necessary or proper party, and was not interested in the result of this litigation except by reason of the existence of an inchoate right of dower, depending upon the contingency that he survive his wife. *Mueller* v. *Rebhan,* 94 Ill. 142; *McNail* v. *Ziegler,* 68 id. 224; *Funk* v. *Eggleston,* 92 id. 515; *Eads* v. *Thompson,* 109 id. 87.

We find no error in the record, and the decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*