JACOB KOFSKY *et al.* Appellants, *vs.* JOHN J. KOFSKY *et al.*
Appellees.

*Opinion filed April 18, 1912.*

1. EQUITY—*clear proof is required to justify a decree trans-
ferring title in pursuance of parol contract.* A court of equity will
not render a decree transferring the title to real estate in pursu-
ance of a parol agreement or contract unless there is clear and
convincing proof of the existence of such contract.

2. WITNESSES—*when wife is not a competent witness.* In a
suit by husband and wife to compel their son to convey certain
land to them which had belonged to the husband and which he had
conveyed to his son, and concerning which a written contract had
been entered into signed by all parties, the wife is not a competent
witness in the husband's behalf. (*Pain* v. *Farson,* 179 Ill. 185,
distinguished.)

APPEAL from the Circuit Court of Lake county; the
Hon. CHARLES WHITNEY, Judge, presiding.

JAMES P. HARROLD, and MAX BORCHARDT, for appel-
lants.

HEYDECKER & PARMALEE, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Jacob Kofsky and his wife, Lena, filed a bill in the cir-
cuit court of Lake county against their son, John J. Kof-
sky, and his wife, Mathilda Kofsky, to compel defendants
to convey to the complainants the north-west quarter of
the south-west quarter of section 28, township 23, north,
range 12, east of the third principal meridian, located in
the county of Lake and State of Illinois. Upon a hearing
in the circuit court of Lake county the bill was dismissed,
and the complainants below have brought the record to this
court by appeal.

The following facts appear from the pleadings and
the testimony: Jacob Kofsky purchased the forty acres in
question in 1888 for $4050. He paid $1500 in cash and

gave a note for the balance. He moved upon the premises with his family and paid the balance of the purchase money. On the 13th day of November, 1890, he and his wife conveyed the premises, by statutory warranty deed, to his son, John J. Kofsky, for the express consideration of $4050, which said deed was made "subject to the unpaid portion of the mortgage on said premises, amounting to $2000, which said second party herein assumes and agrees to pay as part of purchase money." At the time the deed was executed John J. Kofsky made his promissory note for $2000, payable to the order of his father, which said note contained a power of attorney authorizing the confession of a judgment thereon. At the time the deed was executed to John J. Kofsky he was a young man living at home and unmarried. After the execution of the deed he continued to make his home with his parents and worked upon the farm the greater portion of his time but worked for others a part of his time. The testimony of Jacob Kofsky and John J. Kofsky is in direct conflict on most of the material facts. Jacob testifies that at the time the deed was made John J. agreed to re-convey the premises to Jacob at any time when requested to do so; that he (Jacob) continued to exercise acts of ownership over the premises, and that whatever John J. did was under the direction and authority of Jacob; that he often requested his son to re-convey the land back to him, and that he neglected to do so, for one reason or another, until after he married, and then he said that his wife would not sign the deed. John J. testifies that he bought the land in good faith, and that his father never requested him to convey the land back to him and he never promised to do so; that he claimed to be the owner of the premises all the time after the deed was made. The $2000 note executed by John J. to his father not having been paid, the latter caused a judgment to be confessed thereon for something over $3700, and an execution was issued thereon against John J. After the judgment was confessed on the

note all the parties entered into an agreement in writing, by which appellees agreed to execute a note to appellants for $3000, payable in installments of $200 a year for three years, and the balance to be paid four years from date, without interest. Said contract provides: "And in advent that should the first parties sell or dispose of their farm situated in the town of West Deerfield, county of Lake and State of Illinois, any time before said note is paid in full, then the said second parties are to be paid first out of the money should said sale take place." Said contract provided further that the appellants should occupy all of the rooms down-stairs free of rent, and in case appellants desired to move, then John J. agreed to move them without compensation. The agreement provided that appellants were to have half the chickens and half the ducks and two pigs at any time they might demand the same of appellees, and to have the use of a horse and buggy, harness and robes, and a milk cow, and fruit and vegetables off the farm, while they resided thereon. In consideration of this agreement appellants agreed to and did satisfy the judgment of record against John J. Appellants contend that this writing did not express the true agreement entered into between them and appellees; that the contract, in fact, was, that appellees should support appellants so long as they might live, and that appellants signed the contract supposing that it contained such an agreement, but in this respect the decided weight of the testimony is against appellants. In addition to the parties to the agreement there were three disinterested persons present at the time the writing was executed, and their evidence clearly shows that the contract was well understood by appellants at the time they signed the same and that all of their mutual agreements were embodied in the writing. The evidence shows that appellees paid the $3000 note in full to appellants, and after the last payment was made, owing to some disagreements between the families, appellants left the premises and commenced this suit.

There is some evidence tending to prove that at the time the deed in question was executed Jacob Kofsky was indebted to a considerable amount, and that one of his purposes in making the conveyance to his son was to avoid paying certain debts then owing by him.

There are but two errors assigned which we deem of sufficient importance to consider. First, it is contended that the decree dismissing the bill is contrary to the weight of the evidence. Appellants' case depends almost entirely upon Jacob Kofsky's own testimony. As will be seen from the foregoing statement, he is contradicted by John J. Kofsky in substantially all material respects. John J. is corroborated to some extent by the circumstances and by other witnesses. The written agreement recognizes John J. as the owner of the land and as having the power to sell it. Whenever a court of equity is called upon to render a decree transferring the title to real estate from one person to another in pursuance of a parol agreement or contract, it will require clear and convincing proof of the existence of such contract. (*Ryder* v. *Ryder,* 244 Ill. 297; *Patterson* v. *Patterson,* 251 id. 153.) Appellants have failed to furnish the degree of proof required to entitle them to the relief sought. The decree of the court below is not contrary to the evidence.

Appellants next complain that the court erred in refusing to permit Lena Kofsky, wife of Jacob Kofsky, to testify as a witness in this cause. There was no error in this ruling. (*Francis* v. *Roades,* 146 Ill. 635; *Rendleman* v. *Rendleman,* 156 id. 568; *Keithley* v. *Wood,* 151 id. 566; *Donnan* v. *Donnan,* 236 id. 341.) Cases relied on by appellants, like *Pain* v. *Farson,* 179 Ill. 185, and other like cases, where the litigation concerned the wife's separate property and the husband was offered as a witness, are not in point and are clearly distinguishable from the case at bar.

We find no error in the decree below, and it is accordingly affirmed.                                              *Decree affirmed.*