### RUSH CREEK OIL & GAS CO. v. KING et al.

No. 9853—Opinion Filed Feb. 15, 1921.

(Syllabus by the Court.)

**Trusts—Trust Fund—Loan for Drilling Oil Well.**

Where G. loaned R. Company the sum of $3,600, to be used in drilling an oil and gas well, and said money was deposited in a bank under the terms of a drilling contract entered into between R. Company and K. & S. and, at the time said loan was made, R. Company executed an instrument in writing to G., reciting the loan of said money, and in which R. Company agreed to return said

money to G. If it was not used in drilling a well on a certain lease, and in which instrument R. Company recites that it assigns, transfers, and delivers to G. said sum of money and provided that she shall retain said assignment and at such time that R. Company fails to use said money in drilling said well, G. may recall and ask the return of said money, in the event the same has not been expended in drilling said well, and in which instrument R. Company agrees to execute to G. a mortgage upon all leases and physical effects, derrick, and equipment to better secure the money borrowed, held, the transaction constitutes a loan, and not a trust fund, and G. is not entitled to said money as against K. & S., who performed labor under said drilling contract.

Error from District Court, Garfield County; J. C. Robberts, Judge.

Action by William King and J. S. Slike, partners, doing business under the firm name and style of King & Slike, against the Rush Creek Oil & Gas Company, a corporation, and others, intervention by Medora Gibbs. From a judgment for plaintiffs against defendants and intervener, defendant Rush Creek Oil & Gas Company and intervener bring error. Affirmed.

Lydick & Hood, for plaintiffs in error.

W. J. Otjen and George W. Buckner, for defendants in error.

NICHOLSON, J. This action was instituted in the district court of Garfield county by the defendants in error, King & Slike, to whom we will hereafter refer as plaintiffs, against the Rush Creek Oil & Gas Company, hereinafter referred to as the company, and the First National Bank of Enid, to recover from the company the sum of $3,-136, alleged to be due plaintiffs for drilling a certain oil well and for certain delay in prosecuting the work caused by the negligence of the company, under a contract in writing between the plaintiffs and the company, and to restrain the First National Bank of Enid from disposing of, removing, or using the sum of $3,100 on deposit with said bank under the terms of said contract. The plaintiff in error Medora Gibbs filed her interplea, and will be hereafter referred to as the intervener.

The facts are that on or about the 5th day of March, 1917, plaintiffs and defendant company entered into a contract in writing by the terms of which the plaintiffs agreed to drill a well for obtaining oil or gas in section 7, township 21 north, range 4 west, in Garfield county; that under the terms of said contract, the company was to furnish a complete Cushing standard calf wheel rig, all casings and pipe necessary, the size and

amounts thereof to be designated by the plaintiffs, and all water and fuel necessary; said well, unless sooner abandoned by the company, to be drilled to a depth of 2,000 feet or more, as directed by the company, the plaintiffs to receive $3 per foot for the first 1,200 feet or less drilled, and the sum of $3.50 per foot from 1,200 to 1,600 feet, and $4.50 per foot from 1,600 feet to 2,000 feet; no part of said contract price should in any event be paid until said well should be drilled to the depth of 1,200 feet. Upon reaching the depth of 1,200 feet the contract price should be paid, and upon reaching the depth of 1,600 feet the contract price should be paid, etc. It was further agreed that in the event drilling should be shut down for any cause beyond the control of the company, it should not be liable to plaintiffs for delay during the period or periods of such shut-down, but in case any such shut-down should be caused by the negligence of the company or by reason of the breach of any of its agreements in said contract contained, the company agreed to pay the plaintiffs at the rate of $30 per day during the period or periods the drilling of such well should be shut down. It was further agreed that the company should deposit in escrow, in the First National Bank of Enid, Oklahoma, a certified check for the sum of $3,-600, dated concurrently with said contract and delivered to said bank therewith, and it was further agreed that no part of the proceeds of said check should be paid out or used for any purpose other than to pay the cost of drilling said well, and if plaintiffs failed, neglected, or refused to perform any of their agreements in said contract contained, then the company might withdraw said check or the proceeds thereof from said bank and use the same in drilling said well itself, or might employ another contractor to do so, but in no event should any part of the proceeds of said check be paid to plaintiffs except as provided in paragraph 17 of the contract, which paragraph provided that no part of the contract price should be paid until said well had reached a depth of 1,200 feet; and it was further agreed that if said well was abandoned at 1,200 feet in depth or less, the company would pay plaintiffs the teaming expenses of moving their tools to the nearest railway station.

The intervener filed her interplea, in which she stated, in substance, that the $3,600, deposited in the First National Bank of Enid, under the terms of said drilling contract was loaned by her to the company for the specific purpose of paying the actual expenses of drilling said well; that at the time she loaned said money it was agreed in writing

between her and the company that said money was to be used for the actual expenses of drilling said oil well, and in the event drilling ceased, and the money was not used for the actual drilling of said well, then the same was to be returned to her; and praying judgment against the bank for the sum of $3,100, and against the plaintiffs for the sum of $500, the amount previously paid to them by the company under the terms of said contract. The contract between the intervener and the company is as follows:

"Whereas, on this 12th day of March, 1917, Medora Gibbs loaned the Rush Creek Oil & Gas Company, a corporation, of Oklahoma City, Oklahoma, the sum of thirty-six hundred ($3,600.00) dollars, to be used in drilling a well for oil and gas on what is known as the Harrington Lease in Garfield county, Oklahoma; and,

"Whereas, the Rush Creek Oil & Gas Company this day agrees to return said money to the said Medora Gibbs in the event that the Rush Creek Oil & Gas Company does not use said money for the actual purpose of drilling said well.

"Now, therefore, the Rush Creek Oil & Gas Company, this day assigns, transfers and delivers to said Medora Gibbs said sum of money, she to retain this assignment and at such time that the said company fails to use said money in the drilling of said well she may recall and ask the return of said money in the event same is not expended in the drilling of said well for oil and gas. It being understood that she loans the said company the money this day for the specific purpose of drilling said well, and for no other purpose.

"It is further understood and agreed between the parties that the Rush Creek Oil & Gas Company, shall execute a mortgage upon all leases and physical effects, derrick and equipment, due on or before the 14th day of June, 1917, unto Medora Gibbs for the better securing of the money this day borrowed from her.

"Dated this March 12th, 1917."

A jury was waived and the cause was tried to the court, and, at the request of the attorneys for the intervener, the court made special findings of fact and conclusions of law of which it is only necessary to consider the following:

"The court finds that the interpleader, Medora Gibbs, is a stockholder in defendant corporation, and a sister-in-law of the president of defendant, who signed said memorandum.

"This action was brought by plaintiffs to recover the amount alleged by them to be due from defendant under said contract, including $2,100.00 for drilling, and $1,200.00 for delay work, and in said action make the defendant, The First National Bank of Enid, Oklahoma, and Jesse T. Butts, receiver of the defendant, parties defendant therein.

"The intervener, Medora Gibbs, thereafter filed an interplea in said cause, claiming the money deposited in the bank by virtue of her memorandum, and also for judgment against the plaintiffs for $500, which the court finds has been drawn from the bank by the defendant, and paid to the plaintiffs on their contract.

"The defendant, through its receiver, answered the petition of the plaintiffs by general denial, and also filed a general denial to the interplea of Medora Gibbs. The controverted provisions of the contract between the defendant and the plaintiff, involved herein, are contained in the 11th, 17th and 20th paragraphs of the drilling contract, which provides: (11) That plaintiffs shall be paid for drilling the first 1,200 feet or less, of said well, at the rate of $3.00 per foot; (17) no part of the contract price above mentioned shall in any event be paid until said well shall be completed to the depth of 1,200 feet; and (20) in the event that a shut-down or delay of drilling should be caused by the negligence of the defendant, or by reason of a breach on its part of any of its agreements contained in the contract, then plaintiffs shall be paid $30.00 a day for each day they were shut down or delayed.

"The provisions of the contract must be construed with the other parts of the contract, especially that part which provides that the defendant shall furnish all necessary materials, supplies and rig for said drilling.

"After entering into said drilling contract, and in pursuance thereof, the plaintiffs commenced drilling the test well at the location designated therein, and drilled to a depth of 700 feet, at which time, without any fault on the part of the plaintiffs, they were forced to discontinue the drilling of said well, because of the failure of the defendant to furnish casing and other material and supplies necessary in drilling the same, and for the further reason that the drilling outfit, furnished by defendant to plaintiff under the terms of said contract, for said drilling, had been attached by the creditors of defendant, thereby depriving the plaintiffs of the use thereof in the further drilling of said well.

"The court further finds that plaintiffs repeatedly requested the defendant to furnish them the necessary material and supplies, and also to discharge, and cause to be discharged, the attachment on said outfit, in order that they might continue the drilling, all of which the defendant failed and neglected to do, and because thereof the work had been shut down and delayed for a period of 40 days at the time of the commencement of this suit, which was the 1st day of June, 1917.

"The court further finds that the plaintiffs have fully complied with all the terms and provisions of the contract to be performed on their part, except such things as they were prevented from doing by reason of the fault of the defendant, as hereinbefore set out.

"The court further finds that the defendant has breached the contract on its part, by failure to furnish casing and other materials and supplies for drilling said well, and in permitting the drilling outfit to be attached by its creditors, thereby preventing the plaintiffs from carrying out said contract on their part.

"Upon the question of the notice of the several parties, of the alleged assignment of intervener, Medora Gibbs, the court finds that the First National Bank of Enid, the depository of the money to secure the payment to plaintiffs for drilling said well, had no notice or knowledge of said claim of said intervener to the money so deposited, until after the commencement of this suit, but said bank did have notice of the claim of plaintiffs to said money long prior thereto.

"Upon the question of notice to plaintiffs as to the said memorandum or assignment of the intervener, the testimony at first would seem to be somewhat conflicting. Mr. Pruiett, the president of defendant, testified in substance that he told the plaintiff, King, that he gave Medora Gibbs an assignment of the money and that King said, 'I don't give a damn, so you have the money in the bank to drill the well.' It is apparent from that testimony, which King denies, but even taken as stated by Pruiett, that King did not understand the meaning of the statement claimed to have been made by Mr. Pruiett.' The fact that he at the time stated to Mr. Pruiett that he didn't care so long as the money was in the bank to drill the well, forces the court to the conclusion that he still supposed and insisted and understood that the money was in the bank for the purpose of drilling the well, or, in other words, to secure the performance of the contract.

"The court finds that the plaintiffs in the exercise of good faith, and in reliance on the security above mentioned, and in compliance with the terms of said contract, drilled said well to the depth of 700 feet, at which time they were compelled to discontinue the drilling, because of the fault of the defendant, as hereinabove stated and explained, and that the work and labor in so drilling said well was worth and of the value of $3.00 per foot, and that plaintiffs are entitled to recover the sum of $3.00 per foot for the drilling of 700 feet, making a total amount found due the plaintiffs from defendants for the drilling the sum of $2,100.00.

"The court further finds that the plaintiffs were compelled by defendant to shut down and delay the drilling of said well, because of the fault of defendant, for a period of 40 days, and that under the terms of the contract between plaintiffs and defendant, the plaintiffs are entitled to recover from said defendant $30.00 a day for a period of 40 days, making a total sum due plaintiffs on account of such delay $1,200.00 due on account of the delay, leaving $700.00 due on that account.

"The court finds that the plaintiffs are not entitled to recover from the defendant on account of extra labor performed on the pipe line, or for any other extra labor performed by them.

"There is now on deposit in the First National Bank of Enid, the sum of $3,100.00, to secure the performance of the contract between plaintiffs and defendant.

"Conclusions of Law.

"The court concludes, as a matter of law, that that part of section 17 of the drilling contract which provided that 'no part of the contract shall in any event be paid until said well shall be completed to the depth of 1,200 feet,' when construed with the other terms and conditions of said contract, and especially that part which provides that the defendant shall furnish all materials for the drilling of said well, must be held to be valid and binding only in the event that the defendant complies with the contract to furnish said supplies and materials; and in case the defendant fails to keep its contract in that particular, which we do so find, it would be liable for the amount of work actually done under the contract; and the court further concludes that the plaintiffs have a first and prior lien on said deposit, under the terms of said contract, to secure the payment of the sum of money found due them for drilling 700 feet of said well at $3.00 a foot, making a total of $2,100.00, and also the balance due for delay, in the sum of $700.00, making the aggregate sum of $2,800, with interest thereon at six per cent. per annum from the 23rd day of May, 1917.

"The court further concludes that plaintiffs are entitled to recover judgment against the defendant, Rush Creek Oil & Gas Company, in the aggregate sum of $2,800.00, together with interest at the rate of six per cent. from the 23rd day of May, 1917."

The court thereupon rendered judgment for the plaintiffs for the sum of $2,800, with interest thereon at the rate of six per cent. per annum from May 23, 1917, and decreed that plaintiffs had a first and prior lien upon the money deposited in the First National Bank of Enid under the terms of said drilling contract, and directed that said money be applied toward the payment of said judgment.

Counsel for plaintiffs in error, in their brief, state that there is no ground for re-

versal of the judgment of the trial court in so far as it relates to the company, but insist that the judgment is erroneous as to the intervener. Therefore, the only question to be considered is whether or not the $3,600, furnished by the intervener to the company and deposited in the First National Bank of Enid, under the terms of the drilling contract was a trust fund or a loan. The intervener insists that this money was a trust fund, but cites no authority to this effect. In her interplea she alleges that she loaned this money to the company, and in the instrument executed to her by the company it is recited that she did, on the 12th day of March, 1917, loan the company the sum of $3,600, to be used in drilling a well for oil or gas on what is known as the Harrington lease, in Garfield county. It is further recited that the money is loaned for the specific purpose of drilling said well and for no other purpose, and it is further agreed therein that the company "shall execute a mortgage upon all leases and physical effects, derrick and equipment, due on or before the 14th day of June, 1917, unto Medora Gibbs for the better securing of the money this day borrowed from her."

We are unable to agree with the plaintiffs in error that this instrument created a trust or that the $3,600 loaned by her to the company and deposited in the bank under the terms of the drilling contract with plaintiffs was a trust fund. It is clear to us that this transaction was a loan, and while the money was to be used for a specific purpose, viz., for the purpose of drilling a well on the Harrington lease, it was further agreed that she should receive a mortgage upon all leases, physical effects, derrick, and equipment of the company to better secure her for the money borrowed from her.

It is well settled that when the transaction is in the nature of a loan and the agreement accompanying the retention or transfer of possession is merely to pay or repay a certain sum of money, no trust is created. Perry on Trusts (6th Ed.) sec. 133; Weir v. Gand, 88 Ill. 490; Blair v. Follansbee, 67 Ill. App. 144; In re Deaner, 126 Iowa, 701, 102 N. W. 825, 106 Am. St. Rep. 374; Pain v. Farson, 179 Ill. 185; Fike v. Ott, 76 Neb. 439; In re Cornman's Estate, 197 Pa. 125; Butterfield v. Butterfield, 79 Ark. 164; 39 Cyc. 72.

The trial court in his findings of fact found the intervener was a stockholder in the company and a sister-in-law of the president of the company; that the $3,600 by her loaned to the company was deposited in the First National Bank of Enid in accordance with the terms of said drilling contract; that

the company breached the contract and the plaintiffs were entitled to recover the agreed price per foot for the 700 feet drilled and were entitled to recover the agreed price per day for each day they were delayed because of the fault of the company. Plaintiffs in error insist that none of the money was to be paid under the terms of said contract until the well had reached a depth of 1,200 feet regardless of the fact that the company breached the contract and made it impossible for plaintiffs to proceed further with the work. We cannot agree with this contention. The trial court found that the company breached the contract, and that the plaintiffs complied with all the terms and provisions of the contract to be performed on their part, except such as they were prevented from doing by reason of the fault of the company, and were entitled to recover at the contract price for the number of feet actually drilled and for the contract price for delay, and that the same should be paid from the funds deposited in the bank, and in this we think the court was correct.

Finding no error in the record, the judgment of the trial court is affirmed.

HARRISON, C. J., and PITCHFORD, McNEILL, and ELTING, JJ., concur.