Mary Lynch, Appellee, v. Central States Life Insurance Company, Appellant.

512

Opinion filed September 16, 1935.

WHEELER, OEHMKE & DUNHAM, of East St. Louis, for appellant.

BEASLEY & ZULLEY, of East St. Louis, for appellee.

MR. PRESIDING JUSTICE EDWARDS delivered the opinion of the court.

On December 5, 1928, defendant issued its group policy of insurance to the fire department of East St. Louis, by which the life of each member was insured for $1,000, the premium of which was paid by the

department. The policy provided that the insurance upon any employee should cease upon the termination of his employment.

As a part of the contract, it was stipulated: "Any employee of the employer covered under this group policy shall, in case of the termination of employment for any reason whatsoever, be entitled to have issued to him by the Company, without evidence of insurability, upon application to the Company, made within thirty-one days after such termination, and upon the payment of the premium applicable to the class of risks to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance in any one of the forms customarily issued by the Company, except term insurance, in an amount equal to the amount of protection under such group insurance policy at the time of such termination."

John H. Lynch, deceased, husband of plaintiff, was a captain in such fire department. A certificate was taken by him, payable at his death to appellee. In the census sheet attached to the group policy, Lynch's birthday is stated as May 4, 1869, though it does not appear who furnished the information therefor. On October 26, 1933, Lynch, being in the last stages of a cancerous condition upon his neck, and being eligible for a pension, asked to be placed upon the retired list. His request being granted, he was placed upon such list and thereafter, until February 19, 1934, the date of his death, drew a pension.

On October 29, 1933, Harry M. Cryder, an agent of defendant, called upon Lynch and took his application for a policy under the conversion clause before set out. On this application the date of his birth was stated to be May 4, 1870. Cryder did not again see Lynch until November 21, 1933, when he called upon and collected from Lynch the sum of $20 as a deposit on the premium. C. R. Goodrich, an actuary for

defendant, testified that this payment of $20 was the correct amount to pay the premium for three months, or until February 21, 1934, assuming that the date of birth was correctly stated in the application.

On December 1, 1933, Cryder ceased his connection with defendant and became employed by the Ohio National Life Insurance Company. He testified that after accepting the $20 payment, he again called upon Lynch and informed him that there was a discrepancy as to the date of his birth, between the census sheet attached to the group certificate and his application for the conversion policy, and that the defendant required certain proof of such date; also, that at the suggestion of Lynch, he took the latter's application for a $2,000 policy in the Ohio company.

Plaintiff testified that she was present on said last mentioned date; that Cryder requested Lynch to make such application; that she followed the former out of the room and stated to him that her husband had a cancer and could not pass the medical test of the Ohio company, and that Cryder said it would make no difference, he would have Dr. Winning, his next door neighbor, make the examination and there would be no trouble in getting the insurance. She further stated that she was present at all conversations between Cryder and Lynch, and that at no time did the former state that defendant required any further proof of her husband's age, but that he said that defendant would not issue the policy because of Lynch's ailment, and that the latter must have some enemies in the fire department who had given out information as to his condition. Cryder did not deny making any of these statements, and we think the jury was justified in believing that Mrs. Lynch told the truth regarding same.

On January 3, 1934, Cryder and one Christian Breidecker, another agent of defendant, together went to the Lynch home. Both testify they met by accident shortly before, and without previous arrangement

went there. Breidecker then conversed with Lynch, and both he and Cryder testify that the former asked Lynch to remain in defendant company and furnish evidence of the date of his birth; that the latter repeatedly stated that he was going into the Ohio company and no longer desired the insurance of defendant; that thereupon Breidecker prepared a receipt and release as follows: ''I, John Lynch, of E. St. Louis, Ill., hereby acknowledge return of all settlements made by me in connection with my application for life insurance to the Central States Life Insurance Co., under date of Oct. 29, 1933, and in consideration of said return, hereby release the Company from all liability under its receipt No. 158034, which I have lost or mislaid, and agree to hold the Company harmless from any claim which may be set up under the same if found.'' Which instrument Lynch signed. Breidecker then made out and delivered to Lynch a check for $20, and the latter indorsed same and delivered it to Cryder, who took and cashed it.

Lynch died February 19, 1934; payment was refused by defendant, and this suit instituted to enforce the claim. There was a jury trial, a verdict for plaintiff in the sum of $1,000. and interest from the date of Lynch's death, amounting to $32.50, upon which judgment was rendered, and from which this appeal has been taken.

Plaintiff claims that her husband was only temporarily off the force, and hence the original policy was in force at his death. With this we do not agree. We think it clear, from all the proof, that he permanently retired and thereby terminated his employment, and that thereafter whatever rights he had in the premises were under and by virtue of the said conversion clause.

Defendant insists that it was not obligated to deliver the policy to Lynch until the correct date of his birth was furnished, and that same was never done. Upon this record we do not think that defendant can raise

such question. It appears that on October 29 the application was taken, and which Goodrich, the actuary, testified reached the defendant company on or about November 1. The latter then had in its possession the original census list appended to the group policy. On November 21 its agent collected of the deceased the quarterly premium based upon the classification represented by the age stated in the application. It had the opportunity to compare the two statements, and when it sent or permitted its agent to visit Lynch and collect the premium, based upon the fact that he was born May 4, 1870, it thereby, with knowledge of the facts, or chargeable with same by the files in its possession, put him into the class called for by his application, and acknowledged the statement therein as the correct date of his birth.

It is our opinion, because of such facts, that defendant is not in position to raise such question. It is further our belief that by such payment of $20, Lynch became entitled to the issuance of the conversion policy, as paid up until February 21, 1934, and that same was in force until such last mentioned date, unless Lynch had waived or released his rights thereunder as a result of the instrument which he signed on January 3, 1934. We deem this the decisive and controlling question in the case.

It appears from the testimony of Dr. Crotty, who attended Lynch, that from October, 1933, to the date of his death, he was racked with pain, and that it was necessary to keep him under the influence of morphine, which had a dulling effect upon his power of thought and tended to make him drowsy; further, that his neck, on the left side, was swollen from the jaw to the collar bone, and that there was a sore spot at the site of the cancer, which was kept bandaged. The proof also shows that during such period Lynch had delusions, and at times talked incoherently, and that he was steadily growing weaker both physically and mentally.

Cryder and Breidecker testify that on said day Lynch appeared to be in good health; that all they observed to the contrary was a small patch on his neck which, they say, he stated was where he had a boil removed. They were within 3 or 4 feet of him, yet neither testify to seeing the bandage upon his neck; Cryder stating that he did not observe same. It seems strange that with Lynch in the condition in which he manifestly was, under opiates, dying of cancer, and within a few weeks of his death, that witnesses, observing him at a distance of scarcely more than arm's length, should not observe the bandage on, or the swelling of his neck; and that they should express the opinion that his general appearance as to health was good.

Moreover, the document which Breidecker prepared, and which Lynch signed, contained false statements. It recited that the receipt previously issued to him for the premium paid was missing; containing the following language: "which I have lost or mislaid, and agree to hold the Company harmless from any claim which may be set up under the same if found."

Both Breidecker and Cryder admit that such statement was untrue, the latter testifying that such receipt was present at the time of the interview, and that it was then taken by Breidecker, and was not lost or mislaid. Breidecker also stated that Lynch did not lose or mislay it. He said it referred to a receipt attached to the application, and which, obviously, was all the time in the possession of defendant.

These men testify that the release was first read by Lynch, then by Mrs. Lynch, and lastly, that Breidecker carefully read it aloud to both of them. It seems incredible that Lynch, if mentally competent, would, after same was so read, have certified that he had lost the receipt which Cryder stated was then present and delivered to Breidecker. That the latter should have prepared a release which contained a recital of false-

hood, as he well knew, did not comport with honesty, nor is it in consonance with good intentions or fair dealing.

Besides this, both Cryder and Breidecker, while agreeing that such recital was untrue, and known to them to be such, disagree as to what it referred. Cryder stated that it related to the receipt which he gave Lynch for the $20 payment, and which was retained by the latter, while Breidecker said it referred to a receipt attached to the application, which the defendant had in its possession, and which by no possibility could Lynch have lost or mislaid. These facts, coupled with the further improbable statement of these agents that they, representing at the time different companies, met by chance, and then together repaired to the Lynch home, under the circumstances shown by the proof, justified the jury in concluding that their account of what thereafter occurred was unworthy of belief.

The execution of such release was set up in defendant's answer, as an affirmative defense, hence it had the burden of showing that it was voluntarily executed by Lynch, with full understanding, and as his conscious act. *Abhau v. Grassie,* 262 Ill. 636; Jones on Evidence, sec. 180. Under the proof, we think the jury was warranted in finding that such was not the case, and that the purported release was without legal effect.

Objection was made to the competency of Mrs. Lynch as a witness, on the ground that she was, at the time of the events concerning which she testified, the wife of the insured, and as such disqualified under the statute.

There is evidence which tends to show that she was, during the negotiations for the insurance in question, transacting the business for her husband, as his agent, and hence came within one of the exceptions

of section 5 of the Evidence Act, Ill. State Bar Stats. 1935, ch. 51, ¶ 5. *Pain v. Farson,* 179 Ill. 185; *Robertson v. Brost,* 83 Ill. 116. She was properly permitted to testify.

Objection was made by defendant to a portion of the court's charge to the jury, specifically as follows: "The insured had thirty-one days grace to pay the next premium installment, which became due on the 26th day of January, 1934." This provision was a part of the group policy, which, as we have observed, terminated by Lynch's retirement from the fire department, and his rights to insurance thereafter were dependent upon the said conversion clause. This portion of the charge should not have been given, as it had no relation to any insurance under the conversion clause.

As we have seen, it was clearly shown that Lynch had fully complied with the terms of the policy which entitled him to the reinsurance under the conversion clause, and that same was fully paid until February 21, 1934, or two days after his death, and was in force at such time unless it had been canceled by the instrument executed on January 3, 1934. For the reasons before given we are of opinion that the jury properly found there was no cancellation of such insurance.

In view of the situation as disclosed by the record, we do not think the giving of this portion of the charge worked any injury to the defendant; hence is no ground for reversal. *Chicago City Ry. Co. v. Cooney,* 196 Ill. 466.

Being of opinion that the judgment was warranted, it will be affirmed.

*Judgment affirmed.*