Coös,
Feb. 1, 1927.

### Ulric Duval, *Assignee*, v. Metropolitan Life Insurance Company.

The procurement of a policy of insurance by an employer covering his employees under the so-called group insurance plan whereunder the premium is paid partly by the employer and partly by the employee does not constitute the employer the agent of the insurer for the purpose of making an admission in an action against the insurer by the representative of a deceased assured employee, to the effect that the employer agreed to waive the discharge of such employee.

A certificate issued to an employee under such group insurance plan and stating that he is insured "while the employee is in the employ of the employer" and further setting forth a "privilege of continuance," stating therein that "in the event of the termination of the employment for any reason . . . the employee shall be entitled to have issued to him by" the insurer "without further evidence of insurability and upon application made . . . within thirty-one days after such termination and upon the payment of the premium . . . a policy of life insurance," etc., does not keep the original insurance in force for such thirty-one days without any action taken by the assured, but merely offers him a privilege of procuring insurance without medical examination.

Such a certificate fully complies with the provision of the master policy that the insurer will furnish to the employee "a statement as to the insurance protection."

A provision for a forfeiture in a contract should be strictly construed; but a provision merely describing the extent of a right is not a provision for a forfeiture, which exists only where an existing right is nullified.

The provision of P. L., c. 277, s. 6, that a person soliciting life insurance becomes the agent of the insurer for all purposes after issuance of the policy does not apply to a contract neither made nor to be performed in this state.

A ground for recovery not presented at the trial will not be considered in the supreme court.

A party's statement that he foregoes his right does not ordinarily constitute a waiver thereof, if made without a legal consideration and not acted upon by the adverse party.

Evidence of the improper conduct of a party in his cause is merely persuasive, not probative; and hence does not have the effect of supplying deficiencies in the other party's proof.

ASSUMPSIT, upon two contracts of insurance. The contracts were issued to one Bouffard. One promised payment in case of death and the other in case of accidental injuries. The beneficiary named in the contracts assigned her interest therein to the plaintiff.

At the close of the plaintiff's evidence, the superior court (*Young*, J.) granted the defendant's motion for a nonsuit, and transferred the case upon the plaintiff's exceptions to the order and to the exclusion of certain evidence. Further facts appear in the opinion.

*Ovide J. Coulombe* and *Crawford D. Hening* (*Mr. Hening* orally), for the plaintiff.

*Shurtleff, Oakes & Hinkley* (*Mr. Oakes* orally), for the defendant.

PEASLEE, C. J. This is a suit to recover upon two insurance contracts, issued by the defendant to August Bouffard at the request of his employer, The Continental Paper & Bag Mills Corporation. The contracts were made under what is called the group insurance

plan. The employer makes application to the insurer for insurance upon the lives of such of its employees as shall take advantage of the offer. The premiums are paid by the employer to the insurer, and the employer collects a part thereof from the employee, according to an agreement between them.

A group or master policy is issued to the employer, containing a full recital of the contract stipulations. The employer reports to the insurer the names of employees who have accepted the offer of insurance, and thereupon a certificate for each such employee is sent by the insurer to the employer. The certificates state that they are issued under and subject to the terms and conditions of the group policy.

The insurance is effective only during the term of employment. Bouffard's employment ended on June 11, and he was drowned on June 17. There was nothing to show that he was insured at the time of his death, unless such fact could be found from the plaintiff's offer to prove what he claimed was a waiver.

The claim was advanced in the argument here that, employment up to June 11 being shown, employment thereafter might be found by the application of the doctrine of presumed continuity, evidence to the contrary being discredited or satisfactorily explained away. It is a sufficient answer to this position that it was not taken at the trial. Over and over the plaintiff's counsel there admitted a termination of employment, and stated his case as one of waiver or reinstatement. It was this claim, and this alone, that the presiding justice was called upon to consider. A ground of recovery not presented at the trial will not be considered here. *Gage* v. *Railroad*, 77 N. H. 289, 296, and cases cited; *Bjork* v. *Company*, 79 N. H. 402.

Nor is there any substantial basis for the claim now put forward. The testimony of the widow, who was the beneficiary under the policies, was that he left their employ on June 11. She stated in her letter to the defendant that he was out of the employ. The claim of counsel at the trial was that, conceding this to be true, there was a waiver and a reinstatement by the employer. The examination of the employer's superintendent, McCarthy, by plaintiff's counsel was along the same line. The witness was asked if Bouffard did not "get back into the employ that he had left a week or so before." A denial of such fact, and of having said that such was the fact, was the basis for the offer to contradict the witness.

The plaintiff also relies upon certain discrepancies in a certificate

of termination of employment, sent by the employer to the insurer, as evidence of a purpose of the employer to defraud Bouffard's beneficiaries. It is said that this and other circumstances in proof warrant the conclusion that the whole claim of termination of employment was a fraud, and that therefore continuance of employment could be found. One difficulty with this position is that the conduct relied upon is not that of a party to the cause. And if it were, it would not have the effect of supplying deficiencies in the plaintiff's proof. Evidence of the improper conduct of a party in his cause is merely persuasive. It is not probative. *Login* v. *Waisman, ante,* 500.

As counsel concedes, the burden was on the plaintiff to establish the fact of employment at the date of Bouffard's death. If the evidence does not conclusively prove non-employment, neither does it afford any basis for a finding that there was employment. Lack of conclusive proof of the defendant's case is not a substitute for affirmative proof of the plaintiff's claim.

The plaintiff called McCarthy, who denied that on June 17 he talked with Bouffard and agreed to reinstate him. Thereupon the plaintiff offered to show that McCarthy told third parties that Bouffard had been reinstated and the termination of his employment waived. The evidence was excluded and a nonsuit was ordered.

Two claims of ground for recovery have been set up. The first is that under the above offer of proof it could be found that Bouffard was reinstated and in the employ of the Continental at the time of his death. This applies to both policies. The second relates to a special provision contained in the life policy only.

Stated in general terms, the plaintiff's main contention is that the termination of the defendant's liability on June 11 was in some way nullified by the subsequent transactions offered to be shown as above indicated.

There is no question of estoppel here. No acts were done or omitted relying upon representations alleged to have been made. The claim is that there was a waiver of the termination of employment, with a consequent reinstatement of the insurance. As there was no estoppel, it is doubtful whether there is anything at all to be considered upon the claim that there was proof of waiver. A statement that one foregoes his right does not ordinarily bind him, if made without a legal consideration and not acted upon by the adverse party. *White* v. *Phelps,* 12 N. H. 382; *Rice* v. *Chase,* 9 N. H. 178.

While a waiver is sometimes spoken of in a loose way which might

indicate the idea that it would bind the party granting it, simply upon proof that it was offered, the true rule is that, in the absence of an estoppel, it stands like any other undertaking. It must be supported by a consideration or it is not binding upon the party making it. 6 R. C. L. 916.

In some jurisdictions the idea has been adopted that in suits against an insurance company the ordinary rules concerning the binding nature of undertakings are so far relaxed in favor of the insured and against the insurer that a gratuitous offer, made by the insurer and not acted upon by the insured, binds the insurer. *Viele* v. *Insurance Co.*, 26 Ia. 9; *City &c. Company* v. *Insurance Co.*, 72 Mich. 654; 14 R. C. L. 1155.

This feature of the question does not appear to have been the subject of litigation in this state. But the often applied rule that "the doctrine of waiver as asserted against insurance companies to avoid the strict enforcement of conditions contained in their policies, is only another name for the doctrine of estoppel" (*Daley* v. *Insurance Co.*, 81 N. H. 502, 503; *Appleton* v. *Insurance Co.*, 59 N. H. 541, 545), plainly indicates that the law here accords with the general doctrine above stated, rather than with the cases just cited from other states.

In the score or more cases in which a contract was held to have been modified in this way, there is not one that suggests the idea that a waiver pure and simple could avail the insured. On the contrary, the majority of them state the doctrine of estoppel in terms. *Hale* v. *Insurance Co.*, 32 N. H. 295; *Campbell* v. *Insurance Co.*, 37 N. H. 35; *Currier* v. *Insurance Co.*, 53 N. H. 538; *Hadley* v. *Insurance Co.*, 55 N. H. 110; *Appleton* v. *Insurance Co.*, 59 N. H. 541; *Ball* v. *Association*, 64 N. H. 291; *Perry* v. *Insurance Co.*, 67 N. H. 291; *Spalding* v. *Insurance Co.*, 71 N. H. 441; *Dusseault* v. *Association*, 74 N. H. 407; *Wilson* v. *Insurance Co.*, 77 N. H. 344; *Bachman* v. *Insurance Co.*, 78 N. H. 100; *Langlois* v. *Association*, 79 N. H. 264; *Daley* v. *Insurance Co.*, 81 N. H. 502.

In the remainder of the cases there was evidence of an estoppel, upon which the decisions rest. *Leach* v. *Insurance Co.*, 58 N. H. 245; *Marston* v. *Insurance Co.*, 59 N. H. 92; *Carr* v. *Insurance Co.*, 60 N. H. 513; *Gaysville &c. Company* v. *Insurance Co.*, 67 N. H. 457; *Estes* v. *Insurance Co.*, 67 N. H. 462; *Ib.* 597; *Dunn* v. *Insurance Co.*, 69 N. H. 224; *Salvail* v. *Catholic Order &c.*, 70 N. H. 635; *Seely* v. *Insurance Co.*, 72 N. H. 49; *Lally* v. *Insurance Co.*, 75 N. H. 188; *Labranche* v. *St. Jean Baptiste Society*, 76 N. H. 237.

So far as appears from the offer of proof, there was no consideration for the alleged waiver moving to the insurer, or to or from any third party at the insurer's request or for its benefit. But if it be assumed (as the fact very likely is) that the offer was intended to include Bouffard's promise to return to work, and if it is also assumed that this promise would furnish a consideration as against this defendant, the question arises as to the employer's agency to act for the insurer.

There is nothing in the relation or dealings of the parties tending in any way to show express authority given to the employer to make such a statement to the employee, on behalf of the insurer. The claim is made, however, that actual implied authority is to be found from one or all of several features of the situation.

Eight different provisions of the insurance contract are relied upon as severally furnishing evidence tending to prove implied authority to the employer to make the alleged statement with which the plaintiff seeks to charge the defendant. They are here taken up in the order presented in the plaintiff's argument.

The policy provides that it shall not become effective until seventy-five per cent of the employees shall have become insured, and that the company may decline to renew the policy at the end of any year when the percentage falls below that. From this it is argued that the defendant made the employer its agent to solicit insurance. This argument fails to consider the evident fact that the employer was the prime mover in seeking a contract of insurance from the defendant. The employer desired that its employees be insured, and was willing to pay part of the premiums in order to bring about that result. It was interested in getting insurance from, not for, the defendant. The condition made by the defendant that the employer must enroll seventy-five per cent of the employees, was not a commission to the employer to act as the defendant's agent, but merely one of the terms upon which the defendant would issue a policy at the employer's request.

The second provision relied upon relates to insurance of new employees. As to these the stipulation is that they shall make written application, upon forms furnished by the insurer, and that their insurance shall become effective upon the first day of the month succeeding the date of the application. There is a special provision that the employer shall forward to the defendant a list of such applications before the twenty-first of that month. Conceding that this created an agency for the purpose of receiving

applications, it did not make the employer an agent for other purposes. *Tabor* v. *Insurance Co.*, 69 N. H. 666.

The provisions of our statute (P. L., c. 277, s. 6) that the soliciting agent is the representative of the company and not of the insured, is here relied upon. The contract was neither made nor to be performed in this state, and the statute does not apply. *Davis* v. *Insurance Co.*, 67 N. H. 218. But it is urged that, since the question is one of evidence, it relates to the remedy and so the statute will be effective. Although the question is presented by a ruling upon the admissibility of a fact as proof, it is one of substantive law. *Bunten* v. *Davis*, *ante*, 304, 310. The ruling turns upon the issue of the existence of agency.

The acts of the employer in forwarding the application and delivering the certificate to the employee, are claimed to be on behalf of the defendant. No reason is perceived why this should be treated as an agency for the defendant rather than for the employees.

The certificates issued to employees are in a brief form and refer to the master policy issued to the employer for further information. It is urged that this makes the employer the insurer's agent to give such information. The employer holds the master policy not for but rather against the insurer. The reference for information is to the policy, not to the employer. If it were conceded that a false representation by the employer as to the content of the policy could be charged to the insurer, it would not affect the result. There is no claim of any such misrepresentation. The position taken is that the employer had authority to act for the insurer in dealing with its known and acknowledged rights under the policy.

The claim that the employer is the agent of the insurer in the collection and forwarding of premiums is wholly without foundation. By the express terms of the policy the company looks to the employer for the payment of the premiums. It has no concern with whether it collects part of them from the employee or not. The employee is insured because he has made application and because the employer promises to pay the insurer the premiums. The promise to pay is for the benefit of the employee.

Again, it is urged that as the provisions as to notice of claim, proof of loss, etc., are contained in the master policy, therefore the employer is the insurer's agent to give information on these subjects. It is said that the whole purpose of the group insurance scheme would be frustrated unless the employer coöperates with the employee as agent "by implication" for the insurer.

That the employer is expected to coöperate with the employee is evident. The whole scheme is paternalistic. The error of counsel, here and elsewhere, is in failing to appreciate that the paternalism is that of employer towards employee. It does not have the effect of making the benevolent parent the agent of the party with whom he inaugurates a contract for the benefit of his children. The line dividing the three parties to the contract according to their interest and real position in these transactions puts the employer with the employee, as opposed to the insurer.

Much is made in argument of the proposition that the whole plan and scheme was to furnish protection to the insured. Of course this is true, but it does not follow that the insurer is made chargeable with the conduct of the intermediary who sought to bring the insurer and insured into relation, who offered and bound itself to pay to the insurer the price demanded for the insurance, and who agreed to perform the office of keeping the insurer informed as to who had accepted, and came under the terms of, the offer.

The employee was told that the employer held the master policy, and must be deemed to have known that such holding was on his behalf and not for the insurer. He knew that the employer was paying a part of the premium. In short, he knew the whole general scheme. His employer was undertaking to benefit him by transacting the insurance business and carrying a part of the cost. His confidence was put in his employer, not in an agent of the insurer.

It may be noted in passing that there is here no claim of any fraud or deception practiced upon the employee, or of any right lost because full information was not given to him. The supposed difficulties of his situation are here set up as evidence that the employer must be treated as the general agent of the insurer, if the contract is to afford the employee the reasonable protection it is to be assumed the parties intended that he should have. As before stated, the answer to the whole argument is that this is an arrangement instituted by the employer for the benefit of the employees. The employer sought and obtained from the insurer a contract for their benefit. Naturally the employee looks to the employer for guidance and information. There is nothing sinister in such a situation. Their interests are not adverse, but common. The outstanding fact that the employer has interested itself in this matter and has undertaken a part of the financial burden for the benefit of the employees shows that in the ordinary course of events the employee would be expected to place reliance in his benefactor and would

think of the employer in that light rather than consider it to be the representative of the insurer. The insurance was something the employer and the employees were to obtain by their joint efforts. It was not something the employer was engaged in getting as a representative of the insurer.

If the situation be looked at from the standpoint of the insurer, this conclusion is still more evident. It was informed by the employer that the employer desired to initiate this form of insurance for its employees. The insurer issued a policy that admittedly gave full information to the employer. The employer was left free to determine whether it would contribute the whole premium, or collect a part of it from the employee. That was a matter between them, and as to it the insurer had no interest. Coöperation between employer and employee was manifestly expected by the insurer. But that coöperation was entirely on behalf of the insured. Having furnished to the party acting for and in behalf of the employees full and accurate information as to the terms of the contract it would make, the insurer would not be required to go further or be held responsible for the way in which the employer imparted the information to the employee for whom the employer was acting. If the employer failed of this duty, the employee might have a cause for complaint against his unfaithful representative (*Page* v. *Parker*, 40 N. H. 47, 69), although he would have none against the third party with whom the representative dealt.

When the formal contract was issued, it was the natural thing to do to state the terms fully in the group or master policy issued to the employer. As the percentage of premium to be paid by employer and employee was not fixed by the insurer, but left to the agreement made between employer and employee, it is plain that the insurer could not state in the individual certificate the premium to be paid by the employee. Employer and employee are inescapably yoked together in the undertaking; and when the insurer told the employee, in his individual certificate, that the full terms of the contract were stated in the policy held by the employer, it discharged its duty to him in a reasonable way.

There is nothing in the situation or conduct of the parties from which an implied general agency on the part of the employer to make representations or waive rights for the insurer could be found. It follows that the offer of proof that the employer agreed to waive the discharge of Bouffard was properly rejected. The rights of the parties were fixed when Bouffard's employment was terminated.

Because of this conclusion, it is unnecessary to consider the argument made for the admission of contradicting, extra-judicial statements of a witness as positive proof of the existence of facts so stated. See 2 Wig. Ev. (2d ed.), s. 1018.

This idea of the author is contrary to his earlier views. 2 Wig. Ev. (1st ed.), s. 1018. He is careful to state that it is opposed to all the authorities, among which are several decisions in this state. *Tabor* v. *Judd*, 62 N. H. 288; *Lydston* v. *Company*, 75 N. H. 23; *Hobbs* v. *Company*, 75 N. H. 73. But conceding that the authorities ought to be disregarded, it would not affect the result here. If the statements could be so proved in an affirmative way, they would still be merely evidence of the employer's acts and those acts would not bind the insurer.

The life policy was evidenced to Bouffard in a certificate issued to him. The certificate states that it is under and subject to the terms of the group policy, and that he is insured if death occurs "while in the employ of the employer." It also contains the following provision:

"PRIVILEGE OF CONTINUANCE.

In the event of the termination of the employment for any reason whatsoever, the employee shall be entitled to have issued to him by the Metropolitan Life Insurance Co., without further evidence of insurability, and upon application made to that company within thirty-one days after such termination, and upon the payment of the premium applicable to the class of risk to which he belongs and to the form and amount of the Policy at his then attained age, a Policy of life insurance in any one of the forms customarily issued by such company, Term Insurance excepted, in an amount equal to the amount of his protection under the Group Insurance Policy at the time of such termination."

Various theories are advanced to show that the insurance continued after the termination of employment. These all depend upon the proposition that the certificate did not give Bouffard information that the group insurance was effective only while he was employed. The claim is that when Bouffard read the certificate he would get a different understanding, and would be led to believe that there was a continuance for thirty-one days. There is no evidence that he did so understand, if that would avail the plaintiff. The question therefore is merely one of the reasonable interpretation of a written instrument.

When that interpretation is ascertained, both parties are bound

by it. "The plaintiff accepted the policy and has brought this action upon it. There are no facts tending to show that he was defrauded or imposed upon in making the contract, or that its terms differ from what it was represented to him they would be. . . . His incapacity to read English did not excuse him from the obligation to ascertain what its provisions were before accepting it. . . . Under the circumstances, it must be held that the plaintiff 'had notice of, understood and agreed to, and is bound by the terms, limitations, and conditions contained' in the contract." *Lauze* v. *Insurance Co.,* 74 N. H. 334, 338. Other authorities to the same effect are there cited.

"In the absence of fraud one who accepts a policy of insurance is presumed to have knowledge of the terms, conditions and limitations therein contained." *Gagne* v. *Insurance Co.,* 78 N. H. 439, 440.

It is argued that the heading "Privilege of Continuance" means that the original insurance continued for thirty-one days, without any action taken by the insured. No such meaning can fairly be given to the expression used. It means a favor offered to the insured, which he is at liberty to accept or not as he chooses. That this is its true meaning is made certain by the terms of the privilege which are distinctly stated. The party who has been insured may take out regular life insurance without medical examination. He need not furnish evidence of insurability. This is all the privilege undertakes to give.

There is no statement, either direct or indirect, that the original insurance "while in the employ" is continued in the meantime. Conceding all that may be claimed as to the ignorance of the insured and the potency of that element in determining the legal interpretation of the document, prepared and presented by the other party, the plaintiff fails because it is impossible to extract the alleged meaning from the language used.

The claim that the expiration limit amounts to a forfeiture has no substantial basis. The premium was paid weekly. It was for insurance while the wages were being earned. It is simply a case where the insurance was for a term, and the term had expired before the loss occurred.

While the term forfeiture is frequently used to designate a loss which involves no feature of a penalty, that is not the meaning intended when it is said that forfeitures are to be strictly construed. The reason for such a rule is the penal nature of the provision. There is a broad distinction between a provision whereby an existing right is nullified, and those describing the extent of a right.

The former provides for a forfeiture in the more accurate sense of that term, but the latter do not. But if it were assumed that the extreme construction of a writing sometimes adopted to avoid a forfeiture were to be applied, it would not avail the plaintiff. There is nothing in the statement of the privilege of continuance from which a promise or representation that the original insurance was to remain in force could be inferred.

Finally, the plaintiff sets up a claim under the provision of section ten of the master policy which provides that the insurer will furnish to the employee "a statement as to the insurance protection" he has under the contract. The argument seems to be that this provision calls for something beyond what would constitute a sufficient statement of the protection in a written contract between the parties; that the statement must be one to exclude every doubt, and that here more than elsewhere the plaintiff is entitled to rely upon the alleged incapacity of Bouffard to understand a written document. This argument also is founded upon the claim that the statement of the term of the insurance constitutes the imposition of a forfeiture. Because of this, it is urged that the plaintiff can go further than on the other features of the case, that conceding that the certificate given Bouffard cannot be construed as extending the insurance thirty-one days, yet it does not sufficiently state the fact of termination of insurance upon cessation of employment. The substance of the default charged is a failure to state the term of the insurance.

The claim that the certificate extended the insurance thirty-one days after termination of employment has already been considered. The contention that the term is not plainly stated in the certificate stands no better. The promise to pay is not expressed in doubtful language. "If death occurs while the employee is in the employ" the insurance "will be paid." Having thus stated what the promise was, there was no occasion for the insurer to go further and state what it was not. The fact that in the master policy the limit of obligation is stated as terminating with the close of employment, did not obligate the insurer to use the same form of expression in the individual certificate. The form used cannot be construed as not stating "the insurance protection" plainly and adequately.

Unless the rule that a writing is to be given some reasonable construction is to be disregarded, the plaintiff fails to make a case. The suggestion runs through the plaintiff's argument that this certificate is so obscure in its form of expression that it amounts to a

fraud upon the employee. There is no claim that it varies in any way from any representation made to the insured. There is no proof as to how he understood it. There is nothing to show how he probably would understand it, save the writing itself and the facts already stated herein. The cases before cited (*Lauze* v. *Insurance Co.*, 74 N. H. 334; *Gagne* v. *Insurance Co.*, 78 N. H. 439) determine this claim in favor of the defendant.

As the certificate given Bouffard informed him that the term of his insurance was "while in the employ," there is no occasion to consider whether knowledge of the provisions of the master policy is to be imputed to him.

*Exceptions overruled.*

All concurred.

---

Rockingham, }
Oct. 6, 1925. }

FRANK A. MOULTON v. CHARLES S. LANGLEY.

CASE, for negligence, being the same action reported in 81 N. H. 138. Trial by jury and verdict for plaintiff. The plaintiff, while riding in an automobile driven by one Marshall, was injured by a collision between Marshall's car and that of the defendant. The following requests for instructions were denied subject to the defendant's exception:

1. If the collision was a pure accident due to the physical conditions of the locality where it occurred there can be no recovery in this case.

2. If the collision occurred as the result alone or the combined negligence of the driver of the Moulton car and the physical conditions of the locality where the accident occurred, to whose fault those conditions of locality may be attributed, your verdict must be for the defendant.

The jury were instructed in part as follows:

"The mere fact that an accident occurs does not mean necessarily that anyone is financially responsible for the consequences. There must always be some legal fault on the part of a defendant before a verdict can be rendered against him, and if the plaintiff's injury is due in any slightest degree to his own fault there can be no recovery. . . .

If you believe that Mr. Langley was free from fault in all respects, that will bring you at once to the end of the case and you will return a verdict in his favor. . . .

Of course he (the plaintiff) cannot recover against Mr. Langley if the accident was due entirely to the fault of Mr. Marshall; for Mr. Langley must be guilty of some fault contributing to the accident before he can be held liable."

Transferred by *Marble*, J.

*Ernest L. Guptill* and *Bartlett & Mitchell*, for the plaintiff.

*William H. Sleeper*, for the defendant.

*Per Curiam.* The instructions given cover the matters stated in the requests.

*Exception overruled.*

MARBLE, J., did not sit.

---

Strafford, }
Dec. 3, 1925. }

FLORENCE E. WOLCOTT, *by her next friend, v.*
WILLIAM E. FELLOWS *& a.*

ELEANOR C. WOLCOTT, *by her next friend, v.*
WILLIAM E. FELLOWS *& a.*

CASE, for negligence, the plaintiffs sustaining injuries in a collision with an automobile owned by the defendant Fellows and driven by the defendant Stroth. Trial by jury. The plaintiffs excepted to a nonsuit in favor of Fellows. Transferred by *Sawyer*, J.

*Snow & Cooper*, for the plaintiffs.

*Felker & Gunnison*, for Fellows.

*George T. Hughes*, for Stroth.

*Per Curiam.* Upon the evidence it was for the jury to say whether Stroth was driving the car at the time of the collision as Fellows'

agent or as a bailee. The arrangement between them was one of agency if it was for Stroth to endeavor to sell a car for Fellows, and one of bailment if Stroth's undertaking to sell was only his own, and not Fellows', affair. There being evidence of Stroth's negligence, the order is

*Exception sustained.*

SNOW, J., did not sit.

---

Belknap, }
Dec. 3, 1925. }

CHARLES L. PULSIFER & a., *Trustees, v.* LACONIA.

PETITION, for advice, filed by the trustees under the will of Napoleon B. Gale.

The will provided for the purchase and fitting up of a public park in Laconia and also for building a public library in that city. In carrying out these provisions, the library was located in the park.

The trustees hold the residue of the estate under the provision, among others, that "one fourth of the yearly income shall be appropriated to the enlargement and beautifying the Public Park."

Advice is asked as to whether the trustees shall expend the income directly, or pay it over to the city, and whether it can be used for any other parks, or other similar purposes.

Transferred without ruling by *Sawyer,* J.

*Thomas P. Cheney,* for the plaintiffs.

*Stanton Owen,* for the defendant.

PEASLEE, C. J. The trustees are advised that the income of the fund should be paid to the city, to be used for "the enlargement and beautifying the Public Park" in which the library is located.

*Case discharged.*

All concurred.

Grafton, ⎱
Apr. 6, 1926. ⎰

### STATE v. LEON HAMEL.

APPEAL, from a conviction in a municipal court, upon a charge of keeping spirituous liquor for sale. The defendant filed a special plea alleging that he had been convicted of and punished for the same offense in the federal court. The plea was overruled by *Sawyer*, J., who allowed a bill of exceptions.

*Clark B. Frost*, solicitor, for the state.

*Napoleon J. Dyer* and *Frank P. Tilton* (*Mr. Dyer* orally), for the defendant.

*Per Curiam.* The case is governed by *State* v. *Gendron*, 80 N. H. 394.

*Exception overruled.*

Hillsborough, ⎱
May 4, 1926. ⎰

### ARTHUR GIANARIS v. ARMON S. MANGURIAN.

CASE, for malpractice. Trial by jury and verdict for the defendant. Transferred by *Doe*, J., on exceptions to the exclusion of evidence and to the refusal to grant requests for instructions.

*Arthur B. Hayden*, for the plaintiff.

*Irving E. Forbes* and *Doyle & Doyle*, for the defendant.

*Per Curiam.* In the absence of brief or argument for the plaintiff, no error is apparent in the exclusion of evidence, and the exceptions thereto are overruled. *Barsantee* v. *Hartford*, 73 N. H. 616; *Drake* v. *Insurance Co.*, 78 N. H. 604.

As to the other exceptions, none of the evidence is transferred. It is therefore impossible to say what the evidence tended to show relative to the defendant's duty and liability, and it cannot be told from the case or its amendment whether the requests, either all or some, should have been granted. It does not appear whether they were applicable to the evidence. Since requested instructions, although correctly stating rules of law, are properly refused when they are inapplicable to the facts disclosed by the evidence (*Rowell*

v. *Chase*, 61 N. H. 135; *Douyette* v. *Railway*, 69 N. H. 625; *Wheeler* v. *Railway*, 70 N. H. 607; *Saucier* v. *Company*, 72 N. H. 292; *Hart* v. *Railroad*, 72 N. H. 410; *Terrell* v. *Payne*, 81 N. H. 164, 168), the failure to transfer the evidence leaves the propriety of the requests incapable of decision, and examination of their validity as legal propositions is therefore uncalled for.

*Exceptions overruled.*

Municipal Court
of Manchester,
May 4, 1926.

### WLADJASK MOSKWA v. NICHOLAS J. NASSIKAS & a.

ASSUMPSIT, for milk sold and delivered. Trial by the court. Verdict for the plaintiff.

During October, November, and the first five days of December, 1924, the plaintiff delivered one hundred and fifty-four cans of milk to the defendants, who are dealers in milk. The agreed price was fifty cents per can.

On December 2, a milk inspector took a sample of the plaintiff's milk at the defendants' plant, and upon the following day he took a second sample. Tests showed that both samples were adulterated with water. The defendants mixed the plaintiff's milk with other milk and sold it in the usual course of business. They did not know that any part of it was adulterated, until the above tests were made. There was no evidence as to the number of cans delivered by the plaintiff upon December 2 and 3.

Upon the foregoing facts the court found a verdict for the plaintiff for seventy-seven dollars. "The question whether upon the foregoing facts, the verdict for the plaintiff can be sustained" was reserved and transferred from the municipal court of Manchester by *Perkins*, J.

*Timothy J. Howard*, for the plaintiff.

*James A. Broderick*, for the defendant.

*Per Curiam.* There can be no recovery for the purchase price of goods which the vendor could not legally sell. *Albertson* v. *Shenton*, 78 N. H. 216; *Dunbar* v. *Locke*, 62 N. H. 442; *Bliss* v. *Brainard*, 41 N. H. 256; *Lewis* v. *Welch*, 14 N. H. 294; *Roby* v. *West*, 4 N. H. 285. Adulterated milk could not legally be sold. Laws 1917, *c.* 156, *s.* 1.

At least two cans of the milk sold by the plaintiff to the defendants, *i. e.*, those from which the samples were taken, were watered. For the price of these two cans, amounting to one dollar, there can be no recovery. A verdict for the plaintiff for the balance of his claim would be sustainable upon the reported facts.

*Case discharged.*

---

Grafton,  }
June 24, 1926. }

### RICHARDSON & CAMERON CO., INCORPORATED, *v*. HERBERT LAHOUT.

ASSUMPSIT, to recover the balance due on a contract for the installation of a heating plant, and for extras. Trial by the court and verdict for the plaintiff.

The plaintiff agreed to install a steam boiler and 400 square feet of radiation in the defendant's store and dwelling-house in Littleton. The contract contained a warranty that the apparatus specified would heat the rooms to 70 degrees in coldest weather.

After the plaintiff had begun work under the contract, the defendant decided to have radiators placed in two rooms which were not included in the contract, and to install a hot-water tank. This additional radiation amounted to 145 square feet. In December the defendant complained that the boiler was insufficient to heat the premises, whereupon the plaintiff installed a larger boiler.

The court found as a fact that the first boiler was sufficient to satisfy the warranty with only 400 feet of radiation, but was not sufficient with 545 feet. It was further found that the radiation specified in the contract was sufficient to properly heat the premises. The court ruled as a matter of law that the warranty did not apply to the installation as completed, and the defendant excepted. Transferred by *Sawyer*, J.

*Henry A. Dodge* and *Edgar M. Bowker*, for the plaintiff.

*George W. Pike*, for the defendant.

*Per Curiam.* By the terms of the contract the warranty was expressly limited to 400 feet of radiation, and no evidence is reported from which any extension of this warranty could be found.

*Exception overruled.*