JOSEPH FEARON, Plaintiff, *v.* METROPOLITAN LIFE INSURANCE COMPANY and Another, Defendants.

Municipal Court of New York, Borough of Manhattan, Third District, December 31, 1930.

*Speiser & Speiser*, for the plaintiff.

*Edward M. Grout* and *Paul Grout*, for the defendants.

CHILVERS, J. The Metropolitan Life Insurance Company on August 1, 1920, issued a policy of group insurance to Waldorf-Astoria, Inc., covering the life or permanent disability of such of the employees of the latter company as had been, or would from time to time have been, in its employ for a period of at least six months, the coverage being on all such employees during the term of the policy or any renewals thereof. The premium was to be paid by the employer. Each employee had an original life coverage under the policy of $500, with an additional $100 for each year of his employment thereafter.

One Edward Fearon had been employed by Waldorf-Astoria, Inc., since 1917, and the policy, therefore, covered him. The plaintiff, his brother, was his named beneficiary.

The policy was renewed from year to year, up to July 31, 1925. But on December 24, 1924, the insurance was taken over by the defendant Connecticut General Life Insurance Company on a policy substantially similar to the original policy, with a provision for the uninterrupted continance of all coverage, and this latter company carried the group insurance up to the end of 1925. In February, 1925, the Waldorf-Astoria, Inc., released the Metro-

politan from its contract, and the policy was canceled and the unearned premium returned.

The employment of the plaintiff's brother, Edward Fearon, was terminated on October 18, 1925, and he died on November 2, 1925. No claim can be sustained against the Metropolitan. Its contract was last renewed on August 1, 1924, for the period of one year ending July 31, 1925. Whether its obligation to the employees, the beneficiaries under the insurance contract, could be released by the act of the employer in canceling the policy and substituting other insurance, as was done here, is not material, because the obligation ceased to exist on July 31, 1925, and Fearon died the following November. The group insurance policy of the Connecticut General is the only contract on which recovery might be predicated.

The policy contained the following pertinent provisions:

" Termination of insurance: The insurance on any employee shall cease with the termination of his or her employment, except as hereinafter provided. If an employee is totally disabled as hereinafter defined, or is temporarily absent, or is temporarily laid off, or is given leave of absence, the employement need not be considered terminated, provided the insurance is continued on all absent under like conditions.

" Individual certificate and conversion: The Company will issue to the Employer for the delivery to each employee whose life is insured hereunder an individual certificate setting forth a statement as to the insurance protection to which such employee is entitled, to whom payable, together with the following provision for obtaining an individual policy at the termination of employment.

"At the termination of the employment of any employee for any reason whatsoever, or during employment, the Company will without further evidence of insurability, and upon written application made to the Company during employment or within thirty-one days after such termination, and upon the payment of the premium applicable to the class of risk to which such employee belongs and to the form and amount of the policy at such employee's then attained age, issue to the employee a policy of life insurance in any one of the forms customarily issued by the Company, except Term insurance, with equivalent total and permanent disability benefits in an amount equal to the amount of his protection under such Group insurance policy at the time of conversion, which policy shall be in lieu of the insurance protection under this Group policy."

On November 13, 1925, which was within thirty-one days of the termination of the employment, and eleven days after the death of Edward Fearon, his brother, the plaintiff, called at the office

of the Connecticut General Life Insurance Company and stated that he wished to exercise his rights under that conversion clause, and offered to pay any premium which might be due or payable thereunder. The company refused to issue an individual policy or to make any payment. In refusing to issue the policy it was clearly justified. The conversion clause created an obligation on the insurance company to issue a policy, but on certain conditions. One of the conditions, implied, but essential, was the living existence of the person on whose life the policy was to be issued. The form of policy was to be selected. The policy thus chosen was to be one " of life insurance." The premium to be paid was the one " applicable to the class of risk to which such employee belongs " and to the selected form and amount of the policy " at his then attained age." The company was not obligated — nor could it — issue a policy on the life of a person when he was already dead and did not belong to any of the classes of risk as shown in the tables of living persons at their respective ages.

The plaintiff says, however, that the employee was covered by the group insurance policy for thirty-one days after the termination of his employment, until the expiration of the time within which the privilege of conversion could be exercised. Section 101-b, subdivision 4, of the Insurance Law (as amd. by Laws of 1929, chap. 292) directs that every policy of group insurance must provide for the issuance of an individual certificate to the employee informing him of his protection and providing: " That in case of the termination of the employment for any reason whatsoever the employee shall be entitled to have issued to him by the company, without evidence of insurability, and upon application made to the company within thirty-one days after such termination, and upon the payment of the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance in any one of the forms customarily issued by the company, except term insurance, in an amount equal to the amount of his protection under such group insurance policy at the time of such termination."

There is nothing in the statute that says, expressly or by reasonable implication, that the insurance continues for thirty-one days, or for any period, after the termination of the employment. A legislative intent to this effect could easily have been expressed. A period of continuance could have been provided, just as provision was made for days of grace for non-payment of premium in life insurance policies " during which period of grace the policy shall continue in full force." (Ins. Law, § 101, subd. 1, as amd. by Laws of 1923, chap. 28.) In fact, the statute points otherwise;

it is the application that must be made within thirty-one days; the policy might be issued thereafter. If application were made on the thirty-first day, the policy would not, in the ordinary course of events, be written on that day. There would be no necessity for it. The applicant would be entitled to the policy no matter if it took weeks to come through. Could it be contended that the coverage under the group policy would continue until after the thirty-one days and the issuance of the new policy weeks later? Coverage might be obtained, pending the issuance of the new policy, by a binder issued on the application, as is frequently done, but the protection would then be not under the old policy but under the new one to be issued. The statute does not make a binder or other *ad interim* protection compulsory.

Enactments and contracts of insurance are to be construed most favorably to the insured, but only where there is a reasonable possibility of such construction arising out of the express language. A contract will not be implied unless there is express reason for it.

This policy, however, goes beyond the terms of the statute. Under the conversion clause, heretofore quoted, the certificate issued to the employee, which was part of the contract, provided that an individual policy would be issued on application either within thirty-one days after the termination of the employment or "during employment," and further stated that the policy thus issued "shall be in lieu of the insurance protection under this group policy." If the new policy takes the place of something, that something must exist at the time the substitution is made.

There is the further provision in the policy, already quoted, that the insurance on any employee ceases with the termination of his or her employment "except as hereinafter provided." Does this exception, therefore, raise an implication of continuance of the insurance until the issuance of the individual policy under the conversion clause to take its place? I think not.

An individual policy can be had, under this particular contract, not only after the termination of the employment but "during employment." An employee obtaining an individual policy is promptly covered thereby, and if he is still in the employ he would be doubly insured. There is no reason for his continuing to be insured by the employer; therefore, the conversion clause says that the policy thus issued to him is in lieu of the insurance protection under the group policy. His insurance under the group policy terminates with the issuance of the individual policy which takes its place.

The group policy under its terms covers all persons employed, and the insurance continues until the termination of the employ-

ment. However, when an individual policy is issued, it is contemplated that the insurance shall not continue as long as the employment does; as to any employee who has obtained an individual policy under the conversion clause, the group insurance does not continue and it ceases before the termination. The phrase " except as hereinafter provided " must refer to a case where an employee, during his employment, takes advantage of the conversion privilege, in which event the insurance ceases not with, but before, the termination of the employment.

This construction gives effect to the express provisions of the contract and leaves nothing to be implied. Even in cases of insurance, the courts cannot construct a contract for the benefit of the assured, in the absence of an outline therefor clearly to be visualized in the words expressed.

The defendants, therefore, may have judgment of dismissal on the merits.