## SHANKS v. TRAVELERS' INS. CO.
### No. 2708.

District Court, N. D. Oklahoma.
Dec. 20, 1938.

Stanley D. Campbell, of Tulsa, Okl., for plaintiff.

Al C. Thomas, of Oklahoma City, Okl., and Bridges & Parry, of Tulsa, Okl., for defendant.

FRANKLIN E. KENNAMER, District Judge.

. Plaintiff, as beneficiary, brought this suit to recover on two certificates of life insurance issued under a policy of group insurance covering the employees of Mid-Continent Petroleum Corporation. The facts, as agreed upon by the respective parties, are that Ben Shanks was employed by Mid-Continent Petroleum Corporation for approximately 18 years prior to his death. He had been insured during the period, except the first six months of his employment, under a group life insurance policy on which his employer paid the premium. He was discharged from his employment on February 11, 1938, and at the time of his discharge there was in force $1,700 of group insurance on his life, on which the employer paid the premium. During the last ten years of his employment he was also insured under a group insurance plan for additional term insurance, on which he paid the premium, such premium being deducted from his salary monthly by his employer, said employer

paying the premium to the insurance company monthly, in advance. There was in force at the time of his discharge $3,000 of this type insurance. The particular group policy in force at the time of his discharge was issued by the defendant on April 1, 1936, and it covered both the contributory and non-contributory type of insurance. Ben Shank's death occurred on February 12, 1938, one day after the date of his discharge by the company. The amount of premium on his $3,000 contributory insurance was deducted from his pay check the last of January, 1938, and covered the premium requirement thereon for the month of February, 1938. Such premium had been paid to the defendant by the employer, in advance, for the month of February. No refund was made to Ben Shanks, or his beneficiary, for any part of the premium he had paid for the month of February, 1938, although some time after his death the insurance company, by credit memorandum, credited back to Mid-Continent Petroleum Corporation the unearned premium from the date of Ben Shanks' discharge. No notice of any kind was given Ben Shanks that his discharge from employment terminated or cancelled his insurance, and neither did Ben Shanks make any application to the defendant to convert his group insurance to an individual policy, as he had a right to do thereunder.

The group policy provided that such insurance of any employee shall terminate when the employee's employment with the employer shall terminate, and further that the contributory insurance shall terminate when the employment terminated, or prior thereto when the employee shall cease to pay to the employer the required amount to apply toward the premium for the contributory insurance. These provisions were in the master policy, as well as in the individual certificate issued to the insured. The following appeared in the group policy: "Any Employee of the Employer covered under this group policy shall, in case of the termination of the employment for any reason whatsoever, be entitled to have issued to him by the Company without further evidence of insurability, and upon application made to the Company within thirty-one days after such termination and upon the payment of the premium applicable to the class of risks to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance, in any one of the forms customarily issued by the Company, except term insurance, in an amount equal to the amount of the Employee's protection under this policy at the time of the termination of his employment. The issuance of such policy shall be a conversion of the Employee's insurance hereunder and shall as of the effective date and hour of the insurance under such individual policy, immediately and automatically terminate and cancel any insurance of the Employee hereunder then in force."

The question for determination is whether, under the terms of the policy, the insurance was in effect at the time of the death of the insured, or whether the policy of insurance terminated immediately upon the discharge of Ben Shanks from his employment.

The defendant insists that the policy of insurance terminated immediately upon the discharge of the employee; that the provision of the policy above set forth merely grants an option or privilege to the employee to obtain an individual contract of insurance without the necessity of a physical examination, but upon such employee exercising the privilege within thirty-one days after his discharge, and by his filing an application therefor designating the type of contract desired, and paying a premium in advance. Plaintiff insists that the above provision is similar to a grace period in the payment of premiums, and that the policy of insurance remained in effect for a period of thiry-one days after the discharge of Ben Shanks. Defendant, in support of its contention, relies upon a number of cases, which have held that in policies of insurance containing provisions, similar in part with the policy involved in this law suit, that the above provision does not extend the policy in effect for thirty-one days. The plaintiff relies upon a decision of the Supreme Court of Oklahoma holding that such a provision in a policy of insurance continues it in effect for thirty-one days after the discharge of the employee.

In Aetna Life Insurance Co. v. Catchings, 75 F.2d 628, cited by defendant, the Fifth Circuit Court of Appeals, in considering a policy similar in many respects to the one involved herein, held that the provision did not automatically extend the policy in effect for thirty-one days, but that merely a privilege of conversion was given the insured, and that in order for the employee to take advantage of the clause it was necessary for him to select the form

of policy he wanted, make written application for it, and pay the first premium in advance. It should be noted that the policy in this case has a provision in the clause providing for the conversion, to the effect that the issuance of such converted or individual policy shall, as of the effective date and hour of the issuance of such individual policy, immediately and automatically terminate and cancel any insurance of the employee then in force. In the cited case, there was no such provision as noted herein.

In Bradley v. Prudential Insurance Company of America, 70 F.2d 988, the Ninth Circuit Court of Appeals, in considering a policy similar to the one in the case of Aetna Life Insurance Co. v. Catchings, supra, but not containing the added provision with respect to the termination of other insurance in force upon the issuance of the individual policy, held that such insurance ceased upon termination of the employment of the employee. In the cited case, premiums had been deducted from the wages of the employee and paid by the employer to the insurance company, just as in this case, but in the cited case a refund of such premiums had been attempted and consented to by the insured, while in this case no refund was made or attempted to have been made to the insured. Death occurred one day after the discharge of the employee in the instant case, but no refund was made to the beneficiary or other representative of the deceased.

Other cases relied upon by the defendant, to the effect that the provision with respect to conversion of a policy merely constitute a privilege rather than an extension of the effectiveness of the insurance policy, are: Duval v. Metropolitan Life Insurance Co., 82 N.H. 543, 136 A. 400, 50 A.L.R. 1276; Cutledge v. Aetna Life Insurance Co., 53 Ga.App. 473, 186 S.E. 208; Missouri State Life Insurance Co. v. Hinkle, 18 Tenn.App. 228, 74 S.W. 2d 1082; Aetna Life Insurance Co. v. Carroll, 188 Ark. 154, 65 S.W.2d 25; Schooley v. Metropolitan Life Ins. Co., Tex.Civ.App., 77 S.W.2d 886; Fearon v. Metropolitan Life Ins. Co., 138 Misc. 710, 246 N.Y.S. 701; English v. Metropolitan Life Ins. Co., Mass., 15 N.E.2d 804.

These cases are highly persuasive of the correctness of the defendant's position, but are not controlling upon this court. Decisions of the Oklahoma Supreme Court are controlling, rather than cases from other jurisdictions. See Erie Railway Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Ruhlin v. New York Life Insurance Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290.

It has been well established that Federal Courts, in dealing with questions of general commercial law, such as construction of contracts of insurance, are bound to follow the decisions of the appropriate State Court.

This brings us to a determination of whether the Oklahoma Supreme Court has passed upon the question here involved.

In Bean v. Travelers' Ins. Co., 164 Okl. 135, 23 P.2d 216, the Supreme Court of Oklahoma had under consideration a group insurance policy similar to the one involved in the cases relied upon by defendant, and set forth in this memorandum, and similar to the one involved in this case, except that there was omitted from it the provision added to the policy thereafter, to the effect that as of the effective date and hour of the insurance under the individual policy, all other insurance under the group policy was automatically terminated and cancelled. In the Bean Case, supra, an employee of the Marland Oil Company sustained an accidental personal injury on May 26, 1926, and on or about June 8, 1929, his eyesight became so impaired as to permanently prevent him from engaging in occupation or employment for wages or profit; that he left the employment of the Marland Oil Company about July 1, 1928. The injured employee contended that if he was injured while he was an employee and thereafter terminated his employment, and total permanent disability developed after the termination of his employment, that he was entitled to recover thereunder. The policy contained provisions for permanent total disability benefits, to the effect that an employee, prior to attaining the age of 60, who became wholly disabled by bodily injury or disease, which injury became permanent and wholly prevented the employee for life in engaging in any occupation of employment for wage or profit, the company agreed to pay him in full settlement of all obligations to him under the policy. The Oklahoma Supreme Court held that such provisions were applicable only where the policy is in force and effect, and in determining how long such a policy was in effect, states [page 217]: "This policy ceased to be effective thirty-one days after the termination

of the employment for the reason that the conversion privilege was not exercised. The plaintiff's employment with the Marland Oil Company terminated a year before his alleged total disability occurred."

Other reasons were assigned for denying the plaintiff recovery in the cited case, but as one of the questions for decision by the Oklahoma Supreme Court was the length of time the policy was in effect, and as it construed the same to be in effect thirty-one days after the termination of the employment, such a construction should be binding upon this court.

■ The Bean Case, supra, probably could have been decided without the Supreme Court of Oklahoma construing the policy, but as one of the questions before it was the determining of the length of time the policy was in force, and as it determined that the policy was in effect thirty one days after the termination of the employment, such a construction is binding upon this court.

■ Group insurance does not contain certain advantages which exist in individual policies, such as cash surrender values, paid-up insurance features, or loan values. The insurance companies undoubtedly desire to continue in force as many policies of insurance as possible. Since the group policy provides for a lower rate than an individual policy, the advantages of an individual policy are, therefore, eliminated from group insurance, such as paid-up insurance, cash surrender and loan values. Upon the termination of employment, provision is made for the termination of the insurance, but two circumstances stand out prominently as indicating that the group insurance is to remain in effect until an individual policy is selected, or until thirty-one days have expired. The policy in question provides that the issuance of the individual policy shall terminate and cancel the group policy automatically, and such automatic termination is effective the date and hour of the issuance of the individual policy. It is contended by the defendant herein that the disability provision in the group policy, to the effect that an employee totally and permanently disabled, is given an extension of such group insurance for a period of one year after the termination of his employment, and that such a provision was intended to prevent double liability; in that its liability upon the group policy extended in force because of the permanent and total disability, and liability under the individual policy selected during the thirty-one day period. This does not appear to be sound reasoning, because the employee is granted the extended group insurance by reason of being totally and permanently disabled at the time of his discharge or termination of his employment. He has that protection and advantage by reason of the group insurance policy. If he selects an individual policy during the thirty-one days following his discharge, he is required to pay a premium therefor, and should be entitled to protection thereunder. Of course, the contracts of insurance can alter such a situation, and that result has undoubtedly been accomplished in the contracts of insurance under consideration. The reasoning supplied for the inclusion of the provision does not seem sound, and for that reason the above observation is made herein. The policy itself negatives the argument advanced by defendant as the reason for the policy providing that the issuance of the individual policy shall automatically terminate and cancel the group policy, as it provides (Provision 3): "except that no payment shall be made in any such case where the period from the date of termination of insurance to the date of death shall be greater than the period that the insurance of the employee shall have been continuously in force to such date of termination, or where the death shall occur on or after the Effective Date of an individual policy issued to the Employee in accordance with the Provisions of the Conversion Privilege set forth below."

The language found in the policy therefore indicates that a policy was in effect during the thirty-one days, as express provision is made for its termination and cancellation by the issuance of the individual policy. It is unnecessary to provide for termination or cancellation of policies after the thirty-one days period, and if the policy terminated with the discharge of the employee, no necessity existed for providing for the termination of the group policy after the discharge of such employee.

Another reason for construing the policy in the manner determined by the Oklahoma Supreme Court in the Bean Case, is that an intention may be gleaned from the policy that the employee under the group policy is being afforded protection of a life insurance policy provided he obtains an individual policy after his discharge. No provision is made for the issuance of

an individual policy to such employee prior to his discharge from his employment, but a right is vested in him to obtain such an individual policy within thirty-one days after his discharge.

The deceased had paid a premium upon the contributive insurance policy for the entire month of February. The premium was deducted from his wages by his employer, who, under the Statutes of Oklahoma, is an agent of the defendant in this case. Section 10514, O.S.1931, 36 Okl.St. Ann. § 197, provides as follows: "Any person who shall solicit and procure an application for insurance shall, in all matters relating to such application for insurance, and the policy issued in consequence thereof, be regarded as the agent of the company issuing the policy and not the agent of the insured, and all provisions in the application and policy to the contrary are void and of no effect whatever."

The premiums paid by the insured were never refunded to him and under ordinary policies of insurance the return or tender to insured of the unearned premiums is a condition precedent to cancellation of the policy by the company, unless the policy provides otherwise, or unless such return or tender is waived.

In the instant case, no act or thing was done by the deceased, his beneficiary or representatives, which constituted a waiver of the necessity of the return of the premiums. The defendant contends that the Mid-Continent Petroleum Corporation was not acting as its agent, but was acting for and on behalf of itself and its employee. In support of this contention, it relies upon the case of Boseman v. Commercial General Life Insurance Co., 299 U.S. 537, 57 S.Ct. 312, 81 L.Ed. 395. The cited case is not controlling for the reason that the insurance company involved therein was not qualified to transact business in the State where the deductions were made, the master policy having been made to a corporation having its principal place of business in a State where such insurance company was authorized to transact business. No Statute similar to the one in force in Oklahoma was involved in the case. It, therefore, appears that the Mid-Continent Petroleum Corporation was the agent for the defendant in the transaction, and was so constituted by the Statute of Oklahoma, set forth above.

I, therefore, conclude that the policies of insurance were in effect at the time of the death of Ben Shanks and that plaintiff is entitled to recover as beneficiary under such policies.

Judgment may be entered for plaintiff in accordance with the prayers of her petition.