Florence Howard, Appellee, v. Aetna Life Insurance Company, Appellant.

Gen. No. 43,682.

Opinion filed June 26, 1946. Released for publication August 19, 1946.

DEFREES, FISKE, O'BRIEN & THOMSON, of Chicago, for appellant; VIRGIL C. LUTRELL, of Chicago, of counsel.

McKINLEY & PRICE, of Chicago, for appellee; WILLIAM McKINLEY and PAUL E. PRICE, both of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

In a complaint filed in the superior court of Cook county against the Aetna Life Insurance Company, Florence Howard alleged that defendant issued a group life insurance policy to Owens Illinois Glass Company covering its employees and those of its subsidiaries; that on July 7, 1944 James Howard was an employee of the Owens Illinois Can Company, a subsidiary of the Owens Illinois Glass Company, and as such was entitled to participation in the rights, privileges and benefits conferred and granted by the policy; that on that date defendant insured the life of James Howard, with plaintiff, his mother, as beneficiary, in the sum of $2,000, payable in the event of death from any cause; that the certificate of insurance provided, among other things: (a) the insurance thereunder automatically terminated when the employee left the service of the employer, was dismissed, or otherwise discontinued working for the employer;

(b) in the event of termination of employment for any reason, the employee was entitled, without further evidence of insurability, to an individual policy of life insurance from the defendant upon condition that within 31 days thereafter he make written application therefor and pay the first premium thereon; (c) the amount of such individual policy should not exceed the employee's coverage under the group policy; (d) such individual policy should be upon any one of the nonparticipating forms customarily issued by insurer, except term insurance; and (e) the premium of such individual policy should be determined by employee's then age and class of risk, unless he elected to pay up the difference between the group coverage premium and that of the individual policy from the date of the group certificate to the date of the individual policy, in which case the policy would be dated back.

The complaint further alleged that the employee, James Howard, ceased to be employed by Owens Illinois Can Company on October 31, 1944; that he died on November 4, 1944; that he did not, in his lifetime, elect to convert his group insurance; that notice of his death was given to defendant; and that proofs of death were waived by defendant's denial of liability. She asked judgment for $2,000, interest and attorneys' fees on account of defendant's alleged vexatious and unreasonable refusal to pay. Defendant filed a motion to strike and for judgment, specifying the grounds on which it relied. The court denied the motion and defendant refused to plead further. Thereupon, judgment was entered for plaintiff and against defendant for $2,050, representing the face amount of the policy and interest. No claim for attorneys' fees was made at the time judgment was entered and this contention was abandoned. Defendant prosecutes this appeal to reverse the judgment.

Plaintiff's theory of the case is that "during the 31 day period within which the employee had a privi-

lege of conversion the insurance upon such policy necessarily remained in force." Defendant's theory is that "when Howard ceased to be employed by Owens Illinois Glass Company, his insurance automatically terminated; that thereafter defendant's only obligation to him was, at his request and upon his compliance with the conditions precedent enumerated in the certificate, to issue to him an individual life insurance policy; that only the former employee could make such request and comply with such conditions; and that he, not having done so in his lifetime, neither the beneficiary nor a court could bring into being a contract which never existed." We accept as proved all allegations well pleaded, disregarding conclusions of the pleader.

Our Supreme Court in *Schmidt v. Equitable Life Assur. Society of United States,* 376 Ill. 183, said (190):

"No rule in the interpretation of an insurance policy is more firmly' established, or more imperative and controlling, than that which declares that in all cases it must be liberally construed in favor of the insured to the end that he will not be deprived of the benefit of insurance for which he has paid."

In *Moscov v. Mutual Life Ins. Co. of New York,* 387 Ill. 378, the court said (383):

"The parties to an insurance contract may incorporate in it such provisions, not in violation of law, as they choose; and it is the duty of the courts to construe and enforce the contract as made."

In *Aschenbrenner v. United States Fidelity & Guaranty Co.,* 292 U. S. 80, our Federal Supreme Court said (84):

"The phraseology of contracts of insurance is that chosen by the insurer and the contract in fixed form is tendered to the prospective policy holder who is often without technical training, and who rarely ac-

cepts it with a lawyer at his elbow. So if its language is reasonably open to two constructions, that more favorable to the insured will be adopted, *Stipcich v. Metropolitan Life Ins. Co.*, 277 U. S. 311, 322; *Mutual Life Ins. Co. v. Hurni Packing Co.*, 263 U. S. 167, 174; and unless it is obvious that the words are intended to be used in their technical connotation they will be given the meaning that common speech imports. *Neighbors v. Life & Casualty Ins. Co.*, 182 Ark. 356; 31 S. W. (2d) 418; *Tupper v. Massachusetts Bonding & Ins. Co.*, 156 Minn. 65; 194 N. W. 99; *Anderson v. Fidelity & Casualty Co.*, 228 N. Y. 475, 483; 127 N. E. 584.''

The principles announced in the cases from which we have quoted are in harmony. That part of the certificate with the heading ''Conversion Privilege'' is the foundation of plaintiff's case. Defendant contends that plaintiff is attempting by process of strained construction to fasten liability upon defendant, contrary to the plain and unambiguous provisions of a contract entered into by parties legally competent to make it. Plaintiff does not subscribe to defendant's contention that the language is so clear and unambiguous as to leave no room for construction. Defendant asserts that in ordinary understanding ''convert'' means ''to change the form of,'' ''to exchange,'' and when used in connection with insurance policies would connote the substitution of one policy for another; that this is slightly inaccurate, inasmuch as the group certificate having terminated, there is no policy to exchange or convert, and that what is really meant is that a privilege or option is granted to have a new policy issued. Plaintiff states that ''this refreshing concession made by the defendant gives rise to the application of the well settled principle that equivocal expressions in a policy of insurance, whereby it is sought to narrow the range of the obligations these companies profess to assume, are to be interpreted

most strongly against the company," and that the very use of the word "conversion" conveys an implication of a continuance in a different form of that which is the subject matter of conversion.

▇ Group insurance is a distinct form of insurance. Under the usual life policy the premium charged is somewhat larger than the actual cost of coverage, and as a consequence a reserve is in time built up. It is due to the existence of this reserve that the insured may borrow upon his policy, be entitled to extended insurance in the event he ceases making premium payments, and various other benefits usually granted by the contract. Group insurance is in the nature of term insurance. Group insurance policies do not confer privileges usually granted in ordinary life insurance policies. To bring the "converted policy" into being, affirmative action by the former employee is required, including compliance with conditions precedent. After termination of employment for any reason whatever, the former employee is entitled to have issued to him, without further evidence of insurability, a policy of life insurance, provided he makes written application and pays the first premium within 31 days following the termination of the insurance under the group policy. It will be noted that these steps must be taken by the employee. Other paragraphs of this clause all have to do with matter required to be set forth in the application. Each requires the exercise of discretion and judgment. The clause recognizes that the amount of the group coverage may be more than the former employee can carry under an ordinary life policy, with its higher premium rate, and authorizes him to designate any lesser amount, takes cognizance of the existence of a difference of opinion among individuals as to the relative merits of various forms of life policies, and allows the former employee to select the form he prefers. He, however, is required to make the selection. This clause

also gives him the option of having the new policy dated back to the date of his group certificate and having the premium computed at his then age by paying up the difference in premiums. The right to a new policy is conditional and requires compliance with the expressed conditions. The provision requires performance of both manual and mental activities and that the affirmative moves constituting compliance with conditions "must be made by the employee."

We are of the opinion that a former employee's privilege to have an individual policy issued to him does not, of itself, continue his protection after termination of the employment, and that it is not a grace period. The effect of the grace period is to keep the policy alive, whereas the conversion rights do not keep the policy alive except for the single purpose of conversion. In *Aetna Life Ins. Co. v. Catchings,* 75 F. (2d) 628, the court said (629) that "the conversion privilege did not automatically extend the insurance." In *Equitable Life Assur. Soc. of United States v. Yates,* 288 Ky. 309, 156 S. W. (2d) 128, the court said (130):

"He is not insured between the termination of his certificate in the group policy and his exercise of the option by the payment of the premium on the converted policy, and should he die in the 31 day interim there can be no recovery."

See also *Cutledge v. Aetna Life Ins. Co.,* 53 Ga. App. 473, 186 S. E. 208; *Schooley v. Metropolitan Life Ins. Co.* (Tex. Civ. App.), 77 S. W. (2d) 886; *Duval v. Metropolitan Life Ins. Co.,* 82 N. H. 543; *Fearon v. Metropolitan Life Ins. Co.,* 138 Misc. 710, 246 N. Y. S. 701; *Aetna Life Insurance Co. v. Carroll,* 188 Ark. 154, 65 S. W. (2d) 25. Appleman, in his work on Insurance Law and Practice, vol. 1, sec. 125, pages 115–116, said:

"It is absolutely necessary, however, that the em-

ployee act within the designated period . . . and death during that period, without positive action on his part, will not bring the policy into force and effect."

■ We agree with plaintiff that the same rules of construction apply to group insurance as to other forms of insurance. However, a beneficiary thereunder is not entitled to rights other than those intended by the contracting parties. The cases of *Shanks v. Travelers' Ins. Co.*, 25 F. Supp. 740, and *Atlas Life Ins. Co. v. Miles*, 195 Okla. 645, 161 P. (2d) 1022, support plaintiff's contention. The *Shanks* case was decided by the Federal Court of Oklahoma and the *Miles* case by the Oklahoma Supreme Court. The *Shanks* case dealt with a policy in which the language of the policy was more favorable to the contention of plaintiff than the policy in the case at bar. In that case the Federal Court felt that it was bound to follow the law as laid down by the Supreme Court of Oklahoma, saying: (742):

"These cases are highly persuasive of the correctness of the defendant's position, but . . . decisions of the Oklahoma Supreme Court are controlling."

We are satisfied that the better view is expressed by the opinions supporting defendant's contention and that we should not follow the Oklahoma cases. Plaintiff cites *Schmidt v. Equitable Life Assur. Society of United States*, 376 Ill. 183; *Sturmer v. Travelers Ins. Co.*, 279 Ill. App. 607; *Kolodziej v. Metropolitan Life Ins. Co.*, 307 Ill. App. 657; *Poch v. Equitable Life Assur. Soc. of United States*, 343 Pa. 119, 22 Atl. (2d) 590; and *Emerick v. Connecticut General Life Ins. Co.*, 120 Conn. 60, 179 Atl. 335. We have read these cases, but find that they do not support plaintiff's position.

■■ In *Baker v. Prudential Ins. Co. of America*, 279 Ill. App. 5, it appears that an employee covered

by a group policy was discharged on January 7, 1932 and died on February 7, 1932. In reversing a judgment for the employee's beneficiary, we said (10):

"From the material provisions of the policy and the certificates from which we have above quoted, it is clear that the policy covered only the employees of the insured. It did not cover an employee after he had been discharged."

The same conclusion was reached when the case reached this court again. (294 Ill. App. 613, Abst.) In *Lynch v. Central States Life Ins. Co.*, 281 Ill. App. 511, recovery was allowed because the former employee had, prior to his death and within the time limited, made application for an individual policy. In the opinion the court makes it clear that the original policy was not in force because the employment had terminated prior to the employee's death. In *Roehrig v. Missouri State Life Ins. Co.*, 251 Ill. App. 434, recovery under a group policy was denied to the beneficiary of an employee who had gone out on strike prior to his death, on the ground that since he could no longer be considered an employee it necessarily followed that he was no longer insured. Taking the "conversion provision" in its entirety, we are of the opinion that the language is not ambiguous. While the caption "Conversion Privilege" should be considered in determining the rights of the parties and the meaning intended, that caption is not controlling. The body of the clause makes it clear that a new policy would not come into being until the former employee took the required steps. A right in the former employee to exercise the privilege of having a new policy issued to him does not arise until the termination of the relationship of employer and employee. On termination of employment the only right which the former employee retains in the group insurance policy is that of making written application

for another policy in the manner provided. It is obvious that the coverage under the group policy does not continue after termination of employment. We are of the opinion that the court should have sustained defendant's motion to dismiss. Therefore, the judgment of the superior court of Cook county is reversed and the cause remanded with directions to enter judgment for defendant and against plaintiff.

*Judgment reversed and cause remanded with directions.*

KILEY, P. J., and LEWE, J., concur.