GIOVANINA MARIOTTI, PLAINTIFF-APPELLANT, v. METROPOLITAN LIFE INSURANCE COMPANY, A CORPORATION, DEFENDANT-RESPONDENT.

Argued February 7, 1939—Decided April 21, 1939.

For the plaintiff-appellant, *Colombo Cammarano* and *A. Leo Bohl.*

For the defendant-respondent, *George W. C. McCarter* and *Herbert R. Baer.*

The opinion of the court was delivered by

CASE, J. The plaintiff, upon the death of her husband, Sante Mariotti, brought suit against Metropolitan Life Insurance Company upon a group policy insuring the lives of the employes, of whom her husband was one, of United Piece Dye Works, a corporation. On defendant's motion, with supporting proofs, the complaint was struck and judgment entered for the defendant. The appeal is from that judgment.

The master policy was issued July 14th, 1928. Pertinent policy provisions therein contained are as follows: "* * * This shall be for the term of one year from the date of issue of this policy, as set forth below, or for the term of one year from the date of any renewal hereof, and subject to all of

the terms and conditions hereinafter set forth * * *. This policy is issued in consideration of the application of the employer therefor and the individual applications of the initial employes insured, and of the payment of the monthly premium due as provided in Sections three and four * * * and of the further payment of the premiums thereafter becoming due, as provided in said sections, on the first day of each calendar month thereafter * * *. 3. Payment of Premiums. All premiums * * * are payable by the employer to the company on or before their due dates, at the home office of the company, or to an authorized agent of the company, but only in exchange for the company's official premium receipt signed by the president, vice-president, actuary, treasurer or secretary of the company and countersigned by the agent or other authorized representative of the company receiving the premium. The payment of any premium shall not maintain the insurance under this policy in force beyond the date when the next premium becomes payable, except as provided in the next paragraph. A grace of thirty-one days without interest charge will be granted to the employer for the payment of every premium after the first, during which period the insurance shall continue in force. * * * 4. Renewal Privilege. The employer may on due notice to the company at each succeeding anniversary hereof, renew this policy for the term of one year * * * such renewal being conditioned upon the payment of the premiums then due as computed in the manner above set forth, based upon such schedule of monthly premiums as may then be determined by the company. On written request of the employer, approved by the company at its home office, premium payments may, if not then so payable, be changed at any anniversary of the date of issue or renewal of this policy, so as to be payable annually, semi-annually, quarterly or monthly; in this event, the dates and conditions relating to payment of premiums will be changed to conform to such modified periods of payment."

A further policy provision was that the company would issue to the employer for delivery to each employe whose life was insured under the group policy an individual certificate

setting forth certain of the appropriate data. Such a certificate was issued for Sante Mariotti. It provided in part that "In case of the termination of the employment for any reason whatsoever, the employe shall be entitled to have issued to him * * * a policy of life insurance in any one of the forms customarily issued by such company, except term insurance in an amount equal to the amount of his protection under the group insurance policy at the time of such termination." The policy also provided that "No agent is authorized to waive forfeitures or to make, modify or discharge contracts or to extend the time for paying a premium."

Sante Mariotti died on January 15th, 1936, while still in the employ of The United Piece Dye Works. The last premiums paid by the employer to the insurer, applicable to Sante Mariotti's insurance or to the insurance of any other of its employes, was in October, 1934, and was not sufficient to carry any of the insurance beyond that month. Further, there was a form of cancellation on October 26th, 1934, the details of which we shall presently give. Upon the assumption that the premium was paid up to and including October 31st, 1934, the period of grace allowed by the policy expired on December 1st, 1934. On October 9th, 1934, Mariotti paid to the employer the sum of $1.80, sufficient in amount to cover so much of his proportion of the group premium as was to be paid by him to the employer until January 26th, 1935. That money was not paid to the insurer. The employer gave notice of the cancellation to Mariotti. Thereafter plaintiff went to the employer and from there to the Paterson office of the insurer, where an agent told her that the policy was, and would remain, in force until January 26th, 1935, and that the insured had the right to convert the insurance to another form under the terms of the policy. Mariotti signed an application for the conversion and paid the agent the sum of $15, subsequently refunded by a check which plaintiff still holds.

Were the terms of the contract such that the policy, in being continued beyond the anniversary date of July 14th, 1934, was thereby extended to July 14th, 1935? Manifestly

not. The privilege to the employer at each succeeding anniversary date to renew the policy for the term of one year was upon the express conditions that payment be made of monthly premiums on the first day of each calendar month and that the payment of a premium did not serve to keep the policy in force beyond the date when the next premium became payable, saving only the thirty-one days of grace. *Cf. Venditto* v. *Spralt's Patent, &c. (Supreme Court)*, 113 *N. J. L.* 357.

Did the payment on Mariotti's behalf of the sum of $1.80 to the employer on October 9th, 1934, serve to extend the policy life? We conclude not. The only theory upon which an affirmative answer to the question could be based would be that the employer was the agent of the insurer. There is nothing in the contract from which such a relationship may be inferred. The policy provisions are to the contrary. The policy was issued on the application of the employer and of the employes initially insured, the cost to be borne jointly by the employes and the employer, payment of the premium to be made to the insurer by the *employer* but only in exchange for the insurer's official insurance receipt. The amount which Mariotti paid to the employer was not the entire pro rated portion of the group premium represented by his insurance. It was to the *employer* that the policy contract gave the grace period during which an overdue premium might be paid by the employer without forfeiture of policy rights and it was to the employer that unearned or rebated premiums were returned. "The claim that the employer is the agent of the insurer in the collection and forwarding of premiums is wholly without foundation. By the express terms of the policy the company looks to the employer for the payment of the premiums. It has no concern with whether it collects part of them from the employe or not. The employe is insured because he has made application, and because the employer promises to pay the insurer the premiums. The promise to pay is for the benefit of the employe." *Duval* v. *Metropolitan Life Insurance Co. (N. H.)*, 136 *Atl. Rep.* 400.

Was Sante Mariotti entitled, by the terms of the policy, to convert the insurance into an individual policy? He was not.

That privilege was conditioned upon a termination of employment. The employment did not terminate until Mariotti's death.

Was the insurer bound by the oral representations made by its agent in contradiction of the terms of the policy? This, too, must be answered in the negative. The contract plainly stated, and the proof confirms, that the agent had no such authority.

The court below found that the policy had been cancelled and that with the cancellation of the group policy the certificates issued to the several employes also fell. With the underlying principle of the latter part of that proposition, namely, that a termination of the group policy terminates also the individual certificates, we agree. But it is said on behalf of the appellant that a cancellation of the policy could not be lawfully effected without the consent of the employe, and upon this phase of a technical cancellation we find it unnecessary to pass. Whether the policy was or was not canceled the employer had the right, as against the insurer, to discontinue the payment of premiums; and with such discontinuance, subject to the period of grace, the insurance ended.

What is termed in the papers a cancellation was in effect an acquiescence by the insurer in the determination of the employer no longer to carry the insurance. That action was brought about by a letter written on October 26th, 1934, to the insurer by the controller of United Piece Dye Works, under the direction of the latter company, stating: "With this letter we are cancelling the group insurance policy held by us in your company." The insurer adjusted its books to the termination of the insurance as of that date. The period for which the insurance was paid overlapped by five days the action, which is denominated a cancellation, of October 26th. Any dispute as to whether the employer had the authority to effect a cancellation becomes moot for the reason that Mariotti died, still an employe of United Piece Dye Works, six weeks after the expiration of the period of grace. The court below reached its conclusion on the theory of cancellation and refused to consider the automatic termination of the insur-

ance because of the non-payment of premiums. However, the insurer argued that question below. It also argues it here without further response from the plaintiff than that the court "refused to entertain" it. We think that the ground stated in the original notice of motion to strike the complaint, viz., "that the policy of insurance sued on was not in full force and effect on the date of the death of the decedent, Sante Mariotti, January 15th, 1935, but had prior to that date been cancelled," was, as amplified in the argument before the court below, adequate, under the circumstances of the case and the facts as developed by the proofs, to cover the present disposition. The important question is whether the result reached below was lawful, not whether the reasoning of the court was sound. *McCarty* v. *West Hoboken*, 93 *N. J. L.* 247. On the uncontroverted facts placed in proof before the Supreme Court the essential factual allegations of the complaint were shown to be sham and upon the uncontroverted facts thus placed in proof the charge of liability as laid in the complaint was frivolous; so irretrievably so that no amendment in legal phraseology as applied to the uncontroverted facts could save it. We think therefore that the complaint was properly struck.

The judgment below will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ. 14.

*For reversal*—None.